THE STATE OF CONNECTICUT EX REL. RALPH J. MARSH
    ET ALS. *vs.* WILLIAM J. LUM, TOWN TREASURER.

*First Judicial District, Hartford, May Term, 1920.*
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

The town school committee of Wallingford, pursuant to a vote of the
    town, agreed with its public school teachers, all of whom were then
    under contract at stated salaries, to increase the amount of their
    compensation by $150 for the balance of the period, and the teach-
    ers thereupon refrained from exercising their right to resign upon
    giving thirty days' notice, as their respective contracts permitted
    them to do, and continued their work. *Held:*—

1. That there was sufficient consideration moving from the teachers
    to the town to support the agreement, and that the actual con-
    tinuance of the teachers in their employment constituted an
    acceptance of the terms offered by the town for the remainder of
    the school year.
2. That the 24th Amendment to the Constitution of this State, de-
    signed to prevent the payment of gratuities, whether in the form
    of a direct gift or of an equivalent increase of compensation in
    addition to that fixed by statute or contract,—did not forbid the
    action of the town school committee in making what were in effect
    substituted contracts for future services at an increased rate of
    compensation.
3. That under the circumstances the town school committee was
    entitled to resort to mandamus proceedings to compel the town
    treasurer to pay drafts drawn by the plaintiff in favor of the
    teachers at the increased rate of compensation.
An agreement to forbear the exercise of a legal right, made at the re-
    quest of another, is a sufficient consideration for the latter's
    promise.
Actual forbearance is evidence of an agreement to forbear, and in the
    absence of proof to the contrary is often held to be incompatible
    with any other condition.

Argued May 13th—decided July 20th, 1920.

APPLICATION for an alternative writ of mandamus,
brought at the relation of the members of the Town
School Committee of Wallingford, requiring the defend-

* Transferred from the third judicial district.

ant to pay orders drawn by the committee upon him, as town treasurer, in favor of the school teachers of said town, or show cause to the contrary, made to, and returnable before, the Superior Court in New Haven County; the court, *Webb, J.*, granted the defendant's motion to quash the alternative writ and dismissed the application, and from this judgment the plaintiff appealed. *Error and cause remanded.*

The application alleges the following facts: In July, 1919, Hazel M. Fowler and Grace S. Gilbert were employed by the town school committee of the town of Wallingford to serve as teachers in the public schools of that town during the school year beginning on September 8th, 1919, at stated salaries. Each of them, as did all other teachers in the town for that year, entered into a written contract to that end. Among the provisions contained in all these contracts was one permitting their termination by the teacher at any time, except during the last school term of the year, upon the giving of notice, in some cases thirty days and in others four weeks, in advance, of their intention so to do. Pursuant to their contracts the two teachers named, as well as all others in the town, entered upon the performance of their duties. On October 31st, 1919, the members of the school committee met representatives of the teachers at the latter's instigation, when a request was presented to them by and on behalf of the teachers, that they be granted an increase of $300 each for the current school year. At this time the committee was asked for a reply to the petition for increase, on the ground that many of the teachers had received offers of positions with greater remuneration than they were at present receiving and that a decision must be made on such offers. The committee thereupon notified the teachers that it would grant an increase of $150 per teacher,

and would ask for an appropriation for the payment of such increase at a special town meeting of the legal voters of the town. Such meeting was held on the 17th day of December, 1919, at which $11,000 was appropriated for the purpose of making such increase effective January, 1920, and a vote passed authorizing and empowering the committee to increase the pay of all teachers then employed in the public schools of the town for the term beginning January, 1920, by such amount or amounts as the committee should determine. At a meeting of the committee held on February 9th, 1920, it was voted to increase the salaries of each full-time teacher by the sum of $150 for services to be rendered for the balance of the school year commencing February 10th, 1920.

The application for the issuance of the writ, after alleging the above facts, further averred that as a consequence of the increase in salary so voted, the teachers did not avail themselves of the privilege of resignation contained in their original contracts, but accepted the increase, and on or about February 20th, 1920, received their first salary payments at the increased rates, such payments being made by the defendant upon the orders of the town school committee, that thereafter, on February 26th, 1920, the defendant notified the committee in writing that he should thereafter refuse to make payments to the teachers of the town on the increased basis, and that he has since refused to honor orders of the school committee drawn on such basis.

The application further alleged that on March 11th, 1920, the committee issued its orders to Hazel M. Fowler and Grace S. Gilbert, aforesaid, for the payment of $15 each, the amount of salary increases payable to them in accordance with the votes of increase, that the defendant declined to honor and pay these orders,

and that there was grave danger that the public school teachers of the town would avail themselves of the provision of their contracts and tender their resignations, leaving the committee unable to secure teachers in consequence of the defendant's refusal to make payments in conformity with the committee's action in that regard.

An alternative writ reciting the foregoing facts and requiring the defendant to honor and pay the orders issued to the Misses Fowler and Gilbert and all other orders drawn or to be drawn in favor of the school teachers of the town in accordance with the votes of the town on December 17th, 1919, and of the town school committee on February 9th, 1920, or show cause to the contrary, was issued.

*Livingston W. Cleaveland* and *Charles E. Clark*, for the appellants (plaintiffs).

*Oswin H. D. Fowler*, for the appellee (defendant).

PRENTICE, C. J.   It is and was the duty of the defendant town treasurer to honor the drafts drawn upon him by the town school committee in payment of legal obligations incurred by it in the maintenance of the public schools of the town.   General Statutes, §§ 983, 986.   The fundamental question in the case, therefore, is whether or not the drafts here involved, drawn by the committee to the order of two teachers and all other drafts similarly drawn for the like purpose, constitute obligations incumbent upon the town to meet.   The drafts specifically referred to in the application for the writ were drawn for amounts agreed by the committee to be paid to the payees respectively as compensation for their services rendered as teachers. If these and other orders which may have been or may

hereafter be drawn to teachers in the town schools under similar circumstances, do not represent legal obligations of the town, it must be for either one of two reasons, to wit: (1) that the agreement made by the committee to pay the increases in salary which they represent was an illegal and inoperative one for reasons other than constitutional; or (2) that such agreement was forbidden by Article 24 of the Amendments of our State Constitution.

In October, 1919, when the agreement referred to was made, the teachers were each under a contract with the committee to serve in their several capacities for the then school year at stated salaries. At that time the parties to the existing contracts, for reasons not hard to seek, in effect mutually agreed to rescind them and to substitute therefor others of similar purport, but calling for larger salary payments for the balance of the year. This it was perfectly competent—constitutional limitations aside—for them to do, and there was not wanting a consideration to render the new contracts binding and enforceable. The teachers surrendered their existing contract right to forthwith give notice of their purpose to terminate their several employments at the end of four weeks or a month from date, and forbore to exercise that right, while the committee avoided a threatened disaster resulting from resignations by teachers to accept employment elsewhere upon better terms, and the possible closing of schools as a consequence of such resignations. The teachers got a promise of more pay, and the school committee greater assurance that the town's schools would remain open, or at least would not be experimentally manned.

It is said that while there was forbearance on the part of the teachers in this matter, there was no promise to forbear and therefore no real consideration for the

promise of increased pay. But actual forbearance is evidence of an agreement to forbear, and in the absence of proof to the contrary is often held to be incompatible with any other condition. *Waters* v. *White*, 75 Conn. 88, 91, 52 Atl. 401; *Breed* v. *Hillhouse*, 7 Conn. 522, 527; *Boyd* v. *Freize*, 71 Mass. 552, 555.

This latter is the situation here shown. The teachers of the town had presented a request for an increase of $300 for the current year. The committee had complied to the extent of promising an increase of $150 covering the balance of the school year. The teachers, to be sure, did not, as far as appears, express their satisfaction with or acceptance of the proffered new terms, or express their agreement not to accept calls elsewhere or resign. They simply didn't do either, and continued in their work receiving salary at the new rate. In this way they expressed, as plainly as they otherwise could have done, their acceptance of the proffered adjustment and their decision to forbear, at least for a season, the exercise of their contract privilege of terminating their employment upon the giving of a thirty days' notice. They thus gave up something that was legally theirs, and the town has received the benefit of their surrender. "If a man by a promise induces the promisee or some other person on account of or for the benefit of the promisee, to do some act or part with some chattel, title, interest, privilege, or right, which the law regards as of some value, there is sufficient consideration for the promise." *Rice* v. *Almy*, 32 Conn. 297, 304.

The 24th Amendment of our State Constitution has been under careful consideration by this court as to its meaning and scope, and that subject has been removed from the domain of doubt. *McGovern* v. *Mitchell*, 78 Conn. 536, 63 Atl. 433; *Sullivan* v. *Bridgeport*, 81 Conn. 660, 71 Atl. 906. In the former case we held, to quote

the language of the syllabus, which well summarizes the opinion, that "the plain import and intent of this amendment was to prevent for the future the exercise of a power common to each of the corporate bodies named, by which they had been accustomed to pay or grant to particular public officers or employees an 'extra compensation,' that is, money in addition to, or in excess of, the salary or compensation established by law or by contract; or, in other words, that the amendment was designed to prevent the payment of gratuities, whether in the form of a direct gift or of an equivalent increase of compensation in addition to that fixed by statute or contract." In the latter case we said, speaking of the opinion in the former: "It is there held that it is the purpose of the Article to take from the public bodies therein mentioned . . . the power to make gratuitous compensation to public officers and employees. . . ; and that it does not, either directly or by implication, take from them the power to regulate by legislation the public services and the compensation of public officers. They may, therefore, to the extent of their legislative power, enact laws or ordinances fixing the future compensation of such officers." p. 665.

It has thus been definitely and authoritatively determined that the prohibition of the Amendment exhausts itself in forbidding the payment or grant by the public bodies named therein of gratuities or extra compensation defined to be "compensation . . . in addition to, in excess of, or larger than, the compensation prescribed by law or settled by contract," and does not forbid the establishment in the regularly ordained manner of compensation for future services at a sum larger than that already established. *McGovern* v. *Mitchell*, 78 Conn. 536, 559, 63 Atl. 433.

Applying these settled principles to the situation before us, it is clearly apparent that the action of the

town school committee, in making the substituted contracts for increased pay, was not within the prohibition of the Amendment. It in no way involved the payment of a larger sum than the original contracts provided for the teachers' services prior to the date the increase took effect. It provided for increase of compensation for future service and not for the bestowment of a gratuity or the grant of extra compensation.

The plaintiff's resort to mandamus proceedings to compel the performance by the defendant of his legal duty was proper. *State ex rel. Bulkeley* v. *Williams*, 69 Conn. 131, 157, 35 Atl. 24, 421.

There is error and the cause is remanded for further proceedings according to law.

In this opinion the other judges concurred.