RICHARD S. SCALO ET AL. *v.* JOHN C. MANDANICI ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PARSKEY, Js.

Argued May 2—decision released September 18, 1979

142

*John J. McNamara,* with whom was *Thomas W. Bucci,* for the appellants-appellees (defendants).

*Richard S. Scalo,* pro se, the appellee-appellant (named plaintiff).

*Abraham I. Gordon,* for the appellees-appellants (plaintiffs John Albertson et al.).

PARSKEY, J.   On January 23, 1978, the common council of the city of Bridgeport, pursuant to § 29 of the Bridgeport city charter,[1] enacted an ordinance increasing the annual salaries of thirty-nine elected and appointed city officials.   The ordinance went into effect on January 24, 1978, upon being signed by the mayor of the city.   Salaries were thereafter paid in accordance with the new schedule[2] in the ordinance.

---

[1] Section 29 of the charter of the city of Bridgeport reads as follows: "The Common Council of the City of Bridgeport, by ordinance, shall have the power and authority to determine and change the salaries or other compensation of all officials elective or appointed under the charter of the City of Bridgeport."   17 Spec. Acts 838, No. 140, § 3.

[2] The increases provided for by the ordinance over the previously existing salary ordinance, enacted December 18, 1975, are itemized as follows:

| | |
|---|---|
| Mayor | $ 14,000 |
| Administrative Aides to Mayor (2) | 10,000 |
| Secretary to Mayor | 4,168 |
| City Clerk | 4,000 |
| Town Clerk | 4,000 |
| Assistant to Town Clerk I | 965 |
| Assistant to Town Clerk II | 1,335 |
| City Treasurer | 4,000 |
| Assistant City Treasurer | 3,965 |

On January 25, 1978, the plaintiffs, taxpayers and residents of the city of Bridgeport, instituted this action against the city of Bridgeport, John C. Mandanici, its mayor, and other city officials,[3] claiming that the ordinance was illegal and in violation of article eleventh, § 2, of the Connecticut constitution. The plaintiffs also claimed that the ordinance was ineffective in that the salary increases were not approved by the proper authority of the

| | |
|---|---|
| Building Official | 1,555 |
| City Attorney | 3,742 |
| Deputy City Attorney | 4,400 |
| Assistant City Attorney | 4,503 |
| City Engineer | 4,000 |
| Assistant City Engineer | 3,355 |
| City Librarian | 6,500 |
| Comptroller | 7,000 |
| Administrator–Office of Humane Affairs | 2,013 |
| Director of Parks | 2,142 |
| Director of Welfare | 7,253 |
| Director of Public Works | 6,540 |
| Deputy Director of Public Works | 8,000 |
| Harbormaster | 965 |
| Registrar of Voters | 753 |
| Deputy Registrar of Voters (2) | 460 |
| Assistant Deputy Registrar of Voters (2) | 460 |
| Sealer of Weights and Measures | 460 |
| Tax Assessor | 1,142 |
| Tax Attorney | 855 |
| Tax Collector | 2,142 |
| Medical Director | 1,000 |
| Director of Acute and Chronic Geriatric Care (new position) | No information furnished as to previous salary |

[3] The defendants were: John C. Norko, comptroller; Raymond C. Lyddy, city clerk; Frank E. Babycos, treasurer; Michael Mehai, town clerk; and John Moranski, Stephen E. Soracco, Bernard Katz, Armando F. Goncalves, Anthony R. Innacell, Gregory M. Conte, Richard L. DeJulio, Gilberto Hernandez, Gabriel J. Biafore, Edward E. Lesko, Stanley Arrington, William P. Tyer, Thomas A. Mulligan, Jr., Edmund R. Palumbo, Richard T. Meehan, Jr., Willie Phillips, Thomas V. Caco, Kenneth J. Kelley, Frederick J. McKenna and Robert A. Swift, Jr., aldermen of the city of Bridgeport.

city of Bridgeport, as required by § 7-460 of the General Statutes.[4] The plaintiffs sought a temporary injunction, a permanent injunction, an order declaring the ordinance unconstitutional, illegal and void, and an order directing the city to recover the additional money paid pursuant to the ordinance.

On February 14 and 15, 1978, the case was tried to the court, which found that the ordinance was not duly and legally enacted in that it had not been approved by the budget authority of the city of Bridgeport, which the court determined to be the city's board of apportionment and taxation. The trial court, in its memorandum of decision filed on March 23, 1978, ordered that an injunction should issue restraining payment of the salary increases and enjoining the retention of the increases already paid to those officials and employees pursuant to that ordinance. Judgment was rendered accordingly.

Thereafter, on March 28, 1978, the board of apportionment and taxation approved the ordinance and adopted a resolution transferring the necessary funds to the budget.

The city continued to pay salaries in accordance with the ordinance, and, upon application of the plaintiffs filed on April 7, 1978, the court issued an order to the defendants to show cause why they

---

[4] "[General Statutes] Sec. 7-460. COMPENSATION OF OFFICIALS AND EMPLOYEES. Unless otherwise specifically provided in the general statutes, any municipality or subdivision thereof, through its legis‧ lative body, may fix the compensation of its officials and employees, subject to the approval of its budget authority. Any proposed increase in the compensation of the members of the legislative body of any municipality shall be subject to confirmation by referendum at the next regular election of such municipality. The provisions of this section shall be applicable to any municipality, any provision of any special act to the contrary notwithstanding."

should not be found in contempt of court for failure to comply with the court's order of March 23, 1978. On April 13, 1978, after a hearing at which all parties were present, the defendants were held in contempt of court for violating the provisions of the injunction and were given two weeks to purge themselves by recovering the salary increases paid after January 24, 1978. On April 27, 1978, the court, based upon the action taken by the board of apportionment and taxation on March 28, 1978, terminated the injunction, effective retroactively to March 28, 1978. The court also vacated its finding of contempt since the salary increases paid between January 24 and March 28 had been recovered by the defendants.

The defendants have appealed from the judgment rendered for the plaintiffs on March 23, 1978, and from the court's finding of contempt made on April 13, 1978. The plaintiffs have filed a cross appeal from the March 23 judgment and from the court's order of April 27 terminating the injunction and vacating its order of contempt.

## I

### DEFENDANTS' APPEAL

Preliminarily, we address the defendants' claim that the court erred in granting injunctive relief. The defendants claim that an essential prerequisite to injunctive relief is a finding by the court of irreparable harm and the lack of an adequate remedy at law. The court did find, however, that the ordinance was not legally enacted and, thus, payment of the salary increments was an unauthorized expenditure of city funds.

Where a municipal act or ordinance is declared invalid, legally ineffective or ultra vires, it is clear

that a court of law may grant an injunction to prevent the illegal exercise of power; *Whitney* v. *New Haven,* 58 Conn. 450, 20 A. 666 (1890); and see *Wadhams* v. *Torrington,* 152 Conn. 454, 208 A.2d 549 (1965); *Board of Education* v. *Ellington,* 151 Conn. 1, 193 A.2d 466 (1963), and cases cited; and, generally, taxpayers have a right to maintain a suit to enjoin the enforcement of an invalid statute or ordinance where its enforcement will require the expenditure of public funds. 42 Am. Jur. 2d, Injunctions § 191; *Mayor of City of Americus* v. *Perry,* 114 Ga. 871, 40 S.E. 1004 (1902).

There is little dispute that the unauthorized disbursement of public funds by a municipality presents a situation which can best be remedied by an injunctive order. The payments, if continued, would be irretrievably lost, to the detriment of the plaintiffs and other residents and taxpayers of the city of Bridgeport. The trial court did not err in granting injunctive relief to the plaintiffs.

The defendants next assign error to the order of the court holding the defendants in contempt for failure to retrieve the salary increments paid to the thirty-nine employees, and for continuing to pay the salary increases after the court had rendered its judgment enjoining those payments. The defendants, having filed an appeal within eight days of the rendition of judgment, claim that the effect of the court's order was stayed pending their appeal to this court.

In light, however, of the court's order of April 27, 1978, vacating the contempt order, we need not reach this issue. It is well established that courts will not decide questions where there is no actual contro-

versy or where no practical relief can follow from their determination. See *Harkins* v. *Driscoll,* 165 Conn. 407, 334 A.2d 901 (1973), and cases cited; Maltbie, Conn. App. Proc. § 21; 5 Am. Jur. 2d, Appeal and Error § 762. The contempt order in this case was clearly civil, its object being to coerce the defendants to comply with a lawful order of the court, and, in the absence of any showing of prejudicial collateral effects resulting from the order of contempt, the defendants have nothing to gain by our reaching this question. See *United States* v. *Galante,* 298 F.2d 72, 73 (2d Cir. 1962).

The defendants also challenge the court's conclusion that the board of apportionment and taxation is the budget authority of the city of Bridgeport. Section 7-460 of the General Statutes provides that "any municipality or subdivision thereof, through its legislative body, may fix the compensation of its officials and employees, subject to the approval of its budget authority. . . ." The defendants claim that the statute was fully complied with upon approval of the ordinance by the city comptroller. We cannot agree.

In Bridgeport, the board of apportionment and taxation is the only authority with the power to levy taxes and set the final budget appropriations for the city. The comptroller does prepare and submit to the board an estimate of the amounts required by each department of the city government for the coming fiscal year,[5] but the board may, after public hearings, make any alterations in those esti-

---

[5] This is in accordance with § 69 of the Bridgeport city charter, entitled "Powers and duties of the comptroller." 20 Spec. Acts 247, No. 221, § 3.

mates which it thinks are necessary.[6] It is the board which approves and adopts the final budget for the city and the lower court was correct in concluding that the board is the budget authority for the city of Bridgeport. It is apparent, therefore, that approval by the board of apportionment and taxation was needed for the ordinance to be duly enacted into law. This occurred on March 28, 1978.

## II

### PLAINTIFFS' APPEAL

We next reach the issues raised by the plaintiffs on their cross appeal. The plaintiffs claim that: (1) the ordinance is in violation of the constitution of Connecticut, article eleventh, § 2; (2) the board of apportionment and taxation, as the budget authority for the city of Bridgeport, could not give retroactive approval for the implementation of the pay raises; and (3) the purported approval by the board of apportionment and taxation, which was given on March 28, 1978, could not validate the ordinance retroactive to January 24, 1978.

The Connecticut constitution, article eleventh, § 2, provides: "Neither the general assembly nor any county, city, borough, town or school district shall have power to pay or grant any extra compensation to any public officer, employee, agent or servant, or increase the compensation of any public officer or employee, to take effect during the continuance in office of any person whose salary might be increased thereby, or increase the pay or compensation of any public contractor above the amount specified in the

---

[6] The powers of the board of apportionment and taxation are set forth in § 95 of the Bridgeport city charter. 17 Spec. Acts 838, No. 140, § 11.

contract." The plaintiffs contend that the plain language of this constitutional provision mandates reversal of the trial court's conclusion that the ordinance in question does not violate this provision of the constitution. We agree with the conclusion of the trial court.

The scope and purpose of this provision of the constitution[7] was exhaustively considered in *McGovern* v. *Mitchell,* 78 Conn. 536, 63 A. 433 (1906). The *McGovern* court "determined that the prohibition of the Amendment exhausts itself in forbidding the payment or grant by the public bodies named therein of gratuities or extra compensation . . . and does not forbid the establishment in the regularly ordained manner of compensation for future services at a sum larger than that already established." *State ex rel. Marsh* v. *Lum,* 95 Conn. 199, 205, 111 A. 190 (1920). The court thus distinguished properly legislated salary increases for public employees and officials from gratuitous grants of compensation, and found the latter to be the evil at which the provision was aimed. The court reasoned that "the language of this Article cannot support any implication of a limitation upon the exercise of the power of legislation for regulating the public service and the compensation of public officers; and that in enacting this amendment the people had no intention of changing a distinctive feature of our Constitution, which demands of the legislature in the appropriate use of clearly granted powers of legislation a wise discretion, unhampered by detailed directions, and makes its members responsible for such use to the people they represent." *McGovern* v. *Mitchell,* supra, 569–70.

---

[7] This provision was amendment twenty-four of the 1818 constitution, which was in effect at the time of the *McGovern* decision.

In support of their position that the salary increases here considered are unconstitutional, the plaintiffs rely on three cases decided before *McGovern,* namely, *Wright* v. *Hartford,* 50 Conn. 546 (1883), *Smith* v. *Waterbury,* 54 Conn. 174, 7 A. 17 (1886), and *Garvie* v. *Hartford,* 54 Conn. 440, 7 A. 723 (1887). All three cases were discussed in *McGovern; Wright* was also discussed in *Sullivan* v. *Bridgeport,* 81 Conn. 660, 71 A. 906 (1909). *Smith* involved increased compensation to a city attorney to take effect after a new appointment and before the rendition of services and the increase was therefore unquestionably lawful. *McGovern* v. *Mitchell,* supra, 566. *Garvie* involved "a plain case of payment, by a city council, of extra compensation to its members" and the increase was therefore plainly unlawful. Id. In *Wright,* the city council by resolution voted to grant to a tillerman in a fire company a larger salary than that established by ordinance. Because the vote did not and could not alter the ordinance, the increase thus granted was gratuitous compensation in violation of the constitutional provision prohibiting such gratuities. Id. "Neither of these cases [*Garvie* and *Wright*] was concerned with the question now before us, that is, the limitation of the power of legislation by any provision of the amendment; it was not in either case discussed or considered by the court." Id., 566–67.

In *Sullivan* v. *Bridgeport,* supra, the court was faced with another aspect of the constitutional problem. In that case the question presented was whether an ordinance increasing the compensation for police officers was valid. It was there urged that such increases offended the constitutional provision under present consideration. Because such officers had been appointed for an indefinite period and

because the phrase "continuance in office" had been construed to mean "continuing in office under one appointment"; *Smith* v. *Waterbury*, supra, 176; had the court accepted the proferred constitutional construction, such officials and all other employees similarly situated would have been doomed to governmental service at the compensation rate established at the time of their appointment. Nothing in *Smith* suggests that the constitutional provision is limited to those officers and employees appointed for terms. Nothing in *Smith* or *Sullivan* suggests that legislative bodies are free to vote gratuities for those whose appointments are substantially during good behavior. Had the *Sullivan* court believed that the constitutional provision was not applicable to those appointed for indefinite periods, it would not have been necessary for that court to distinguish *Wright* v. *Hartford*, supra, on the ground that in *Wright* the council attempted to change, by resolution, a salary established by ordinance whereas in *Sullivan* the council made the change by a duly enacted ordinance. The *Sullivan* court, however, faced squarely with a salary increase made applicable to police officers during their continuance in office, upheld the increase on the basis of the construction of article eleventh, § 2 laid down in *McGovern*. *Sullivan* v. *Bridgeport*, supra.

The plaintiffs urge us to distinguish this case from *McGovern* v. *Mitchell*, claiming that in *McGovern* it was members of the judiciary whose salaries were increased during their terms of office and members of the judiciary only "technically" serve for a term. This position is untenable as judges do, as constitutionally provided, serve for a term. Conn. Const., art. 5 § 2. The conclusion of the court in *McGovern*, that the constitution does not

prohibit a municipality from granting pay raises to politically elected and appointed officials during their continuance in office, is not dictum; it is a well reasoned holding which controls the result in the case at hand.[8] The plaintiffs characterize the enactment of the salary ordinance as "a raid upon the city's treasury," but § 29 of the Bridgeport city charter authorizes the common council to determine and set the appropriate compensation for elected and appointed city officials. If there is an abuse of legislative power, the ballot box continues to be the avenue of recourse for aggrieved citizens.

Lastly, we reach the plaintiffs' claim that the board of apportionment and taxation could not retroactively approve the salary ordinance. We agree that there could be no retroactive approval of the ordinance, that is, that the board's approval on March 28, 1978, could not retroactively validate payment of the increases from January 24, 1978, to March 28, 1978. The defendants, in any case, have abandoned any claim for payment of the salary increases between January 24, 1978, and March 28, 1978.[9] There appears, however, to be no reason in law or logic why the board's approval on March 28, 1978, would not satisfy the requirement of General Statutes § 7-460 that the budget authority approve this municipal ordinance. There is no time require-

---

[8] The conclusion reached by the *McGovern* court is corroborated by the inclusion in the constitution of a specific prohibition against increasing the salary of the governor and lieutenant governor during their terms in office. Conn. Const., art. 4 § 7. Substantially similar provisions were contained in the 1818 constitution in article fourth, § 4.

[9] This claim was abandoned contingent on our sustaining the trial court's conclusion that the budget authority of the city is the board of apportionment and taxation. As previously set forth, we have sustained that conclusion.

ment set forth in the statute and the plaintiffs give us no reason for insisting that the budget authority approve the ordinance before the legislative body acts on it. The approval by the board validates what was otherwise ineffective legislation because the invalidity of the ordinance resulted from the omission of the board's approval. Again, whether the ordinance is approved by the budget authority and then acted upon by the legislative body or vice versa appears to be of no great consequence. The trial court committed no error in dissolving its order of injunction based on the approval of the salary ordinance by the board of apportionment and taxation.

There is no error.

In this opinion COTTER, C. J., LOISELLE and LONGO, Js., concurred.

BOGDANSKI, J. (dissenting). For this court to uphold the ordinance granting the instant pay raises is in direct violation of article eleventh, § 2 of our state constitution and contrary to public policy.

It is undisputed that the various defendants are either elected or politically appointed officials of the city of Bridgeport. Article eleventh, § 2 of the constitution of the state of Connecticut provides in clear and unequivocal language that "[n]either the general assembly nor any county, *city,* borough, town or school district *shall have power* to . . . *increase the compensation* of any *public officer* or employee, *to take effect during the continuance in office* of any person whose salary might be increased thereby . . . ." (Emphasis added.)[1]

---

[1] "Continuance in office" has been held to mean current term of office under one appointment or election. *Smith* v. *Waterbury,* 54 Conn. 174, 7 A. 17.

That the above constitutional provision was first adopted in 1877; Conn. Const., amend XXIV; and has remained intact to the present time is significant.[2] This constitutional provision expresses a clear intention on the part of the people of this state to prohibit any municipal body from voting increases in compensation for elected or appointed officials to take effect during the current term of office of such officials. In *Wright* v. *Hartford,* 50 Conn. 546, 547, this court observed: "The [constitutional] provision regards an increase during the term of service and a gift at its close as equally destructive of the public good and aims to prevent *both* . . . . As it regards an increase and a gift with *equal* abhorrence, so it abhors them equally whether made in behalf of the servant highest in dignity or of the lowest." (Emphasis added.)

It should be emphasized, however, that article eleventh, § 2 does not prohibit any or all increases in the compensation of public officials and employees but *only* such increases as are intended to take effect during the current term of office of the officials receiving such increases. To my mind, the requirement of a delay in the effectiveness of a pay increase was clearly intended by the drafters of this constitutional provision to ensure that increases in salary enacted at the taxpayer's expense would be for the benefit of the office and not for the immediate benefit of the particular individual then holding that office. In this way the drafters sought to ensure that all such salary increases would be made in a properly disinterested manner.

---

[2] The delegates to the 1965 constitutional convention explicitly retained and incorporated this same provision in the constitution adopted by the convention.

When the individual defendants campaigned and succeeded to their elective and appointive positions, they knew full well what the compensation was for the offices which they were seeking. At no time prior to their election or appointment did they indicate to the taxpayers and voters that they would seek increased compensation immediately upon being elected or appointed. They should therefore not now be permitted either to argue that their salaries are not comparable with other municipal salaries or to vote themselves pay increases[3] intended to take effect during the current term of office in violation of article eleventh, § 2. *Garvie* v. *Hartford,* 54 Conn. 440, 7 A. 723.

I must therefore dissent.

[3] It is conceded that a pay increase such as those at issue here would have been valid if they were limited to an effective date beginning upon the next succeeding term of office or appointment.