[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs instituted this action by filing an application for temporary injunction and order to show cause and a verified complaint dated November 12, 1997 made returnable to the court on December 9, 1997. The defendant filed a motion to dismiss dated December 1, 1997 when the parties appeared for CT Page 6610 the show cause hearing. Because the plaintiff had not had an opportunity to address the issues raised in the motion to dismiss, the matter was rescheduled for December 22, 1997. In addition, the court noted that the prior pending action, brought in Stamford Superior Court, was withdrawn.
On December 16, 1997, the plaintiffs filed a motion for permission to add new plaintiffs and to file an amended application for temporary injunction and an amended complaint as well as a memorandum in opposition to the defendants' motion to dismiss. In their amended application, the plaintiffs request that the court enjoin the defendants from:
 a. Interfering with the organization, status and property of the Long Ridge volunteer company;
 b. Interfering with the collective bargaining relationship between the Long Ridge volunteer company and its professional fire fighters;
 c. Withholding or diverting tax proceeds necessary to maintain as many professional and volunteer fire fighters at Station 2 as are necessary to fulfill the responsibilities of the Long Ridge volunteer company; and
 d. Continuing to station fire fighters from the Stamford Fire and Rescue Department at Station 2.
On December 22, 1997, the court denied the motion to dismiss and overruled without prejudice the objection to the filing of the amended complaint. The court continued the matter until January 20, 1998 and took evidence over several days. On January 28, the court entered the following orders pending its decision on the application for temporary injunction: that the city not interfere with the organization, status and property of the Long Ridge volunteer company; that it not withhold or divert tax proceeds which have been provided for in the present budget from the Long Ridge Fire Company; and that payments be made in a timely fashion.
The central issues to be addressed are: whether the court has the necessary jurisdiction to determine whether the charter was violated; whether the plaintiffs must exhaust their administrative remedies regarding the alleged interference with CT Page 6611 the collective bargaining relationship; and whether an injunction should issue in response to the plaintiffs' claims for relief.
The court finds the following facts from observing the demeanor of the witnesses, from their testimony and from the exhibits, notably the labor contracts, the charter and the by-laws of the Long Ridge Fire Company. The plaintiffs, Rustici, Re, Nau, and Schaller, among others, are professional fire fighters in the Long Ridge Fire Company, ("LRFC") a volunteer fire company in the Long Ridge section of the city of Stamford. They are paid employees and members of the Long Ridge Paid Drivers Association, ("LRPDA") the collective bargaining representative of the fire company's professional employees. Nau and Schaller are residents of the Long Ridge area of Stamford and pay property taxes to the city. The defendant Malloy is the mayor of Stamford. The defendant Haselkamp was director of labor relations in Stamford at relevant times but is presently the director of human resources. The defendant Byrne was, at all relevant times, the director of public safety, health and welfare in the city. The defendant city of Stamford is a municipality in the state of Connecticut. The defendant LRFC is one of five volunteer fire companies in the city.
On February 8, 1996, Kurt Semmel, chief of the LRFC granted an interview to the local newspaper, the Stamford Advocate. In the interview, Semmel discussed his budget request for 24-hour staffing of the LRFC which was manned from 8 a.m. to 1 a.m. To provide full-time coverage, two additional men were needed for overnight and weekend coverage. He gave examples of emergency situations wherein lack of staffing could have resulted in lack of protection of the public safety. He stated that his requests through the budgetary process had not been granted by the former mayor, Stanley Esposito, and he hoped that the new mayoral administration would be more sympathetic. The interview also discussed the support of the other volunteer districts, all of which had "at least one paid person providing bare bones coverage each hour" as well as the support of Local 786 of the International Association of Firefighters ("IAFF") for informational picketing in North Stamford. As a result of this interview, which was headlined, Fire Company sounds alarm, the mayor formulated a plan to station Engine 6 of the downtown department at Station 2 of Long Ridge.
On February 9, Semmell was called to a meeting at the conference room of the mayor's office. He asked Nau to accompany CT Page 6612 him. Also present at the meeting were Chief Ron Graner and Deputy Chief Brown of the Stamford Fire and Rescue Department, ("downtown"), Dave Roberts, a fireman from the downtown department, James Romaniello, president of local 786 of the IAFF, and John Byrne, health and safety director for the city of Stamford. The paid drivers are members of their own association but also members of Local 786 of the IAFF. No one was present from the other volunteer fire departments.
Before the meeting, the mayor met with Graner, Brown and Romaniello and told them of his plan. When he met with Semmel and Nau, he stated that because of the article in the Stamford Advocate, he felt compelled to address the situation and was therefore sending Engine 6 with a complement of sixteen men to Long Ridge Fire Station 2. The mayor did not declare a state of emergency. He subsequently announced this decision to the press. Neither Semmel nor Nau participated in, acquiesced in or consented to this action. Neither the membership nor the trustees of the LRFC were consulted before this action was taken.
Although Semmel, together with Gunther Schaller and the president of the Springdale Volunteer Fire Company met with the mayor several days later to discuss the need for two additional firefighters in lieu of the sixteen fire fighters from outside the LRFC, the sixteen firefighters were not removed. No chief of the LRFC asked for the removal of the downtown fire fighters. The cost to the taxpayers of the sixteen fire fighters is $1.2 million annually, while the cost of the two additional firefighters is calculated at $150,000.
Behind the mayor's move was his desire to implement the recommendations of a consultant's report which had been prepared for his predecessor. That report addressed the change in the provision of volunteer services and the demographic changes in Stamford. It concluded that there was an excess of fire fighters in the downtown department and a shortage of fire fighters in the volunteer ranks. The mayor had been attempting to obtain a consolidation agreement with the volunteer fire companies but negotiations with the LRFC and the LRPDA had not progressed to the satisfaction of any of the parties.
The thrust of such an agreement would make the professional fire fighters of the LRFC, members of the downtown department and city employees. Consolidation would affect their pension rights, ranks, salary and other conditions of employment. CT Page 6613
Negotiations between city officials Haselkamp, Byrne, and Romaniello, the labor representative of Local 786 of the IAFF, and the labor representatives of the LRPDA occurred throughout 1996 and into 1997. These negotiations have failed to resolve the disputes among the parties. Animosity and distrust has developed and affected relations between all parties. In October 1997, the present plaintiffs brought an action in the Stamford judicial district against Romaniello, Local 786 of the IAFF, Malloy, Haselkamp, Byrne and the city of Stamford, which action was withdrawn after the present suit was started. Intermittent discussions have ensued but have been fruitless. Additional facts relevant to the disposition of the application for temporary injunction shall be provided as needed.
 I
The first issue the court must address is whether or not it has jurisdiction to consider the plaintiffs' first request, to wit: to enter a temporary injunction to enjoin the defendants from interfering with the organization, status and property of the LRFC. The defendants argue that the plaintiffs do not have standing to seek this relief because this relief must be sought by the LRFC. The LRFC is not a plaintiff to this action, although it is a defendant.[1]
In Community Collaborative of Bridgeport Inc. v. Ganim,241 Conn. 546, 552-53, 98 A.2d 245 (1997), the court said that ". . . [i]t is a basic principle of law that a plaintiff must have standing for the court to have jurisdiction. Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has . . . some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . ."
In Alarm Applications Co. v. Simsbury Volunteer Fire Co.,179 Conn. 541, 548-49, 427 A.2d 822 (1980), the court stated: "We have long recognized the capacity of taxpayers of towns and cities to challenge the legality of the actions of their municipal officers by seeking injunctive relief against such action. . . . We have said that a party's status as a taxpayer without a demonstration by him of some tangible injury, does not by itself confer standing upon him where the defendant is a municipal corporation. . . . Thus, our cases in this area have CT Page 6614 required two conditions for the maintenance of actions seeking to challenge municipal conduct: (1) the plaintiff must be a taxpayer of the defendant municipal entity; and (2) the plaintiff must allege and demonstrate that the allegedly improper municipal conduct causes him to suffer `some pecuniary or other great injury.'" (Citations omitted.)
In the present matter, the plaintiffs Nau and Schaller are taxpayers and residents of the Long Ridge area and are, therefore, served by the LFRC. The injury which they suffer is the increase in their taxes which results from the cost of stationing Engine 6, $1.2 million, compared to the cost of two additional fire fighters, $150,000, and the impact of any change in their employer's status, obtained through illegality or coercive actions, upon their rank, seniority, benefits and pension rights. The court finds that these plaintiffs have standing to bring this action. Accordingly, the court has jurisdiction to hear this application for temporary injunction.
 II
"To prevail on an application for temporary injunction, the burden is on the applicant to establish (1) a reasonable degree of probability of success on the merits; (2) irreparable harm with no adequate remedy at law, and; (3) the harm likely to be suffered by the applicants is greater than that resulting from the interference occasioned by an injunction." Arrowhead By theLake v. Arrowhead, Superior Court, judicial district of Waterbury, Docket No. 128458 (December 31, 1996, Riefberg, J.); see also Griffin Hospital v. Commission on Hospitals,196 Conn. 451, 457-58, 493 A.2d 229 (1985).
The court finds that there is a likelihood that the plaintiffs will prevail on the merits of the case with regard to the charter violation.
In Stamford Ridgeway Associates v. Board of Representatives,214 Conn. 407, 423-24, 572 A.2d 951 (1990), the court stated as follows: "It has been well established that a city's charter is the fountainhead of municipal powers . . . . The charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised. . . . Agents of a city, including [the board of representatives], have no source of authority beyond the charter. . . . In construing a city charter, the rules of statutory construction generally apply. . . . A city CT Page 6615 charter must be construed, if possible, so as reasonably to promote its ultimate purpose. . . . In arriving at the intention of the framers of the charter the whole and every part of the instrument must be taken and compared together. In other words, effect should be given, if possible, to every section, paragraph, sentence, clause and word in the instrument and related laws. The real intention when once accurately and indubitably ascertained, will prevail over the literal sense of the terms. When the words used are explicit, they are to govern, of course. If not, then recourse is had to the context, the occasion and necessity of the provision, the mischief felt, and the remedy in view. The language employed must be given its plain and obvious meaning, and, if the language is not ambiguous a court cannot arbitrarily add to or subtract from the words employed. A charter provision, like a statute must be definite and certain. An individual must be able to determine whether his or her proposed activity is prohibited." (Citations omitted; internal quotation marks omitted.)
Section 5-40-3 (d) of the charter of the city of Stamford provides as follows:
 Jurisdiction. The services of the Fire and Rescue Department under the control of the Chief shall be limited to the City Fire Service District, except in the case of an emergency. Nothing in this Charter shall be construed to affect the organization, status or property of the Volunteer Departments of Stamford. The Fire Service Districts are indicated on the map of Fire Service Districts, prepared by the City Engineer, dated January 21, 1997 and on file in the Office of the Town and City Clerk of the City and shall delineate the fire service boundaries of the respective regular and Volunteer Fire Departments. Changes in Fire Service Districts may be made by ordinance adopted by a two-thirds vote of the total membership of the Board of Representatives with the advice of the City Fire and Rescue Chief and the respective Chief of the Volunteer Fire Department affected.
The defendants argue that the introductory word "Jurisdiction" CT Page 6616 as used in this charter relates to a geographical area of authority or control. The sentences which follow define the jurisdiction of the fire departments in the city of Stamford. The Fire and Rescue Department operates under the control of its chief in the city fire service district. The fire service districts are delineated on a map and their boundaries cannot be changed except by the action of the Board of Representatives as set forth above. The downtown department cannot operate in the other districts "except in the case of an emergency." Practice, of course, has dictated that these fire departments, through their mutual aid agreements, enter each other's districts in emergencies. No emergency existed on February 9, 1996. Semmel did not claim an emergency existed in his interview, although he was attempting to sway public opinion with a sense of urgency. The court rejects the more tortured interpretation of this section of the charter posited by the defendants and finds that the plain language of this section is clear as to the issue before the court. That language, crucial to the plaintiffs' argument, is the language which states that "Nothing in this Charter shall be construed to affect the organization, status or property of the Volunteer Departments of Stamford." The court finds that "nothing" indeed means "no thing."
The plaintiffs allege that the mayor violated § C5-40-3 of the charter when he ordered Engine 6 to Station 2 because that action interfered with the organization, status and property of the company. The defendants argue that the mayor's action did not violate the charter as it did not involve any change in the internal structure of the company, its status as a volunteer fire company, or its ownership of property. They contend that the chief of the fire company acquiesced in, or consented to the transfer of Engine 6 of the downtown department to Long Ridge Station 2 by not contesting the transfer nor seeking the removal of Engine 6. The court does not agree with the defendants' positions.
The stationing of sixteen fire fighters whose employer is the city of Stamford and whose chief is the chief of the downtown department affects the organization and status of the volunteer company. These sixteen fire fighters are not employees of the volunteer company in which they serve. The volunteer company's ability to control its operations is weakened by the presence of outside personnel and equipment. The "downtown" fire fighters belong to a different bargaining unit than the fire fighters of the volunteer company. They belong to Local 786 of the IAFF, CT Page 6617 which consists of all uniformed and investigatory positions within the Stamford Fire Department. The plaintiff members of the LRFC belong to the LRPDA/Local 786 of the IAFF which is the exclusive bargaining agent for the paid professional firefighters of the LRFC. In their labor contract, the volunteer company and the union/association "recognize the association for working out the terms and working conditions for the contract." The LRFC cannot negotiate with the city fire fighters in the event of problems which might cause conflict with the terms of the downtown fire fighters labor contract, or which might arise between its own employees and the downtown employees. While the court finds that the friction which exists between both groups is largely selfinduced, the fact remains that an outside fire fighting force is stationed in the Long Ridge Fire District and affects the organization, status and property of the LRFC.
The property of the company is affected because the sixteen fire fighters have their own truck which the volunteer company does not own. It is stationed on the property of the volunteer company. Section 12 of the constitution and by-laws of the LRFC speaks of the duties of the trustees. "It shall be the duty of the Trustees to supervise the performance of the line officers, administrative officers, salaried employees and the general membership. They shall also hire non-members or engage service organizations to perform services or functions not performed by members, such as annual audits, tax preparation and other financial and legal work as approved by the membership. It shall further be the duty of the Trustees to take charge of all Company properties, to receive for inspection an inventory of all properties from the Chief, to submit such inventory at the July meeting of the Company, to examine the state of the Company's finances and accounts, to examine all bills against the Company, to recommend measures to preserve the Company's credit, to examine the financial records of the Company and to issue a report about the financial status of the Company in writing, no later than the regular meeting following the July meeting. It shall further be the duty of the trustees to issue written procedures for the acquisition and disposal of Company properties and enforce compliance with such rules."
The trustees are authorized to "take charge of all Company properties" and this court finds that power to include the use of the company's fire station to house non-company equipment. The trustees were not consulted by the mayor or any of the other defendants before Engine 6 was transferred. The fact that some or CT Page 6618 all of the trustees resigned in the wake of this lawsuit has no bearing upon the resolution of this issue. The mayor's action therefore, interfered with the organization and property of the fire company in violation of § C5-40-3 of the charter. The defendants further argue that the transfer of Engine 6 received the approval of Chief Semmel and therefore, has not violated the charter. The defendants also argue that Chief Higgins, a successor to Semmel, never told the city to remove the city equipment and personnel. Therefore, they argue this constitutes acquiescence on the part of the plaintiffs. Without color of acquiescence the defendants agree that the city cannot claim the right to assign the downtown fire fighters to Long Ridge as that claim "would have an effect on the property" of the company. (Defendants' Brief, Feb. 11, 1998, p. 19.)
The constitution and by-laws of the fire company provide for its membership, voting rights and general rules of governance. Article V describes the duties of officers and trustees. Section 6 sets forth the duties of the chief. "It shall be the duty of the Chief to take command of all the fire fighting and emergency services of the Company. He shall be in charge of all personnel under his command. He shall hold at least one monthly meeting with the other line officers. He shall submit to the Executive Board recommendations concerning the operational rules to be contained in the Company Standing Rules, specifically, regulations and procedures having to do with fire and other emergencies, duties of line officers by rank, duties of paid personnel, and use of equipment. He shall prepare a written inventory for inspection to the Trustees. He shall be responsible for the appointment of appointed officers."
The court finds that the chief had no power to acquiesce in, or consent to, the mayor's unilateral action in sending Engine 6 to Station 2.
The defendants also argue that the last sentence of § C5-40-3(d) of the charter deals the plaintiffs' arguments a fatal blow. That section provides that "Changes in Fire Service Districts may be made by ordinance adopted by two-thirds vote of the total membership of the Board of Representatives with the advice of the City Fire and Rescue Chief and the respective Chief of the Volunteer Fire Department affected." This court does not agree with the defendants. Where the charter allows a change, it provides the method of change, on the aforementioned issue, to wit: a vote by two-thirds of the total membership of the board of CT Page 6619 representatives, the legislative body of the city. This section cannot be cited, therefore, for the proposition that an individual city official can affect a change in the organization, status or property of the fire company.
For the foregoing reasons, the court finds that the defendants lacked the authority to send Engine 6 to Station 2. The court finds that there is a likelihood that the plaintiffs will prevail on the merits of the case with regard to the charter violation.
The court also finds that the plaintiffs have suffered irreparable harm and have no adequate remedy at law. In Scalo v.Mandanici, 179 Conn. 140, 145, 425 A.2d 1272 (1979), the court stated that "taxpayers have a right to maintain a suit to enjoin the enforcement of an invalid statute or ordinance where its enforcement will require the expenditure of public funds." The court emphasized that "[t]here is little dispute that the unauthorized disbursement of public funds by a municipality presents a situation which can best be remedied by an injunctive order. The payments, if continued, would be irretrievably lost, to the detriment of the plaintiffs and other residents and taxpayers of the city. . . ." Id. Similarly, in the present case, the defendants have illegally assigned sixteen fire fighters to Long Ridge Station 2 at a cost of $1.2 million. The two fire fighters requested by the LRFC would merely cost $150,000. Accordingly, the plaintiffs, as taxpayers of Stamford, may enjoin the defendants' unauthorized disbursement of public funds.
The court concludes that the harm that may be caused by the injunction does not outweigh the harm that the plaintiffs are likely to suffer if such relief is denied. The facts in Board ofEducation v. Ellington, 151 Conn. 1, 193 A.2d 466 (1963) are analogous to the facts in the present case. The board of education of the town of Ellington submitted an estimate of its annual budget requirements to the board of finance of that town. Id., 4. The board of finance recommended to the town meeting a total appropriation that was less than the amount requested by the board of education. Id. The board of finance, however, recommended that there be included in the budget for general government services two special appropriations that were to be used for school purposes. Id. The recommendations made by the board of finance were approved at the town meeting. Id., 5. The board of education sought an injunction for the transfer of the special appropriations from the general government CT Page 6620 budget to the board of education's budget. Id., 3. The trial court issued the injunction and the Supreme Court of Connecticut noted that the recommendation and approval of the special appropriations was tantamount to a determination that these funds were necessary and within the financial resources of the town. Id., 13.
The reasoning of the Supreme Court in Ellington is applicable here. By providing sixteen fire fighters to Station 2 at a cost of $1.2 million, the city of Stamford has demonstrated that the LRFC's request for $150,000 is both necessary and affordable. Consequently, Stamford can, without great harm, provide the fire company with the money necessary to hire two additional fire fighters who will replace the sixteen fire fighters. The residents of the Long Ridge fire district will then have sufficient fire protection without having to pay additional taxes to support the sixteen fire fighters.
Accordingly, the court grants the plaintiffs' requests for a temporary injunction and enjoins the defendants from interfering with the organization, status and property of the LRFC and further enjoins the defendants from continuing to station fire fighters from the Stamford Fire and Rescue Department at Station 2.
 III
The plaintiffs seek an order enjoining the defendants from interfering with the collective bargaining relationship between the LRFC and its professional fire fighters. The defendants argue that the court lacks jurisdiction to enjoin the defendants since the plaintiffs have failed to exhaust their administrative remedies.
The court finds the following additional facts relevant to the disposition of this application for temporary injunction. Although there had been consolidation discussions before February 9, 1996, the court finds that, throughout 1996, the city labor negotiator, Haselkamp, threatened the LRPDA negotiators with the loss of jobs in the event the paid drivers did not agree with the city's proposals that they become city employees. This job loss would be accomplished through the budget process. Haselkamp stated that the funds appropriated for the LRFC would not be released thereby leading to lay-offs. In fact, funds that were to be issued to the LRFC were delayed for several weeks at one point CT Page 6621 causing the chief to tell the paid drivers that he might have to issue pink slips. The defendants point out that Haselkamp had no authority to cause the fire fighters to lose their jobs. Nevertheless, the paid drivers took these threats to heart believing that they could be replaced by city fire fighters at any time inasmuch as the city had already assigned Engine 6 to Station 2.
The negotiations concerning consolidation included such topics as the change of the paid drivers' status as LRFC employees to employees of the downtown department. This status change would mean that the LRPDA would no longer exist as the drivers' bargaining agent. The drivers would participate in the city fire fighters' pension plan which could create a discrepancy in benefits. The pension benefits of the paid drivers, all of whom are lieutenants, would be based upon the fire fighters' rate rather than the lieutenants' rate. The drivers would no longer contribute to, or have contributions made to, the social security system. They would not be able to earn additional quarters under the social security system as fire fighters. At present, the paid drivers have $50,000 life insurance policies with LRFC. Were they to become city employees the amount might not be $50,000 but could be less depending upon their salary. In addition, the city proposed that lieutenants of Long Ridge be paid according to the fire fighters' rate of pay rather than the lieutenants' rate.
Article XIX of the collective bargaining agreement of the Association/Company provides that "The Company shall make reasonable efforts to cause the City to include the employees of the company in the workmen's compensation and health insurance coverage which the City provides for personnel employed by the City Fire Department. In the interim, and until replaced, by a City administered plan, subject to acceptance by all parties, the Company shall provide and pay for each employee and family: hospital, medical, major medical, life insurance and dental plans." It would appear that the members of the LRPDA seek to be included in at least the city's health plan despite the opposition of the plaintiffs.
In addition, Article XX of the collective bargaining agreement allows the company to make "every reasonable effort to cause the City of Stamford to include the employees of the company in the pension plan established for the Stamford Fire Department or a comperable (sic) separate pension plan provided by the city of Stamford." Based on these provisions the city of CT Page 6622 Stamford cannot be found to be interfering in the collective bargaining relationship between the LRFC and the LRPDA in the area of insurance benefits and pension benefits.
At the time of this hearing, the plaintiffs were without a new contract with the LRFC. It is their belief that the LRFC has failed to bargain collectively because of pressure from the city. Thus, the plaintiffs are asserting a claim against the LRFC for breaching its duty to bargain collectively, and against the city for interfering with their efforts to bargain collectively with the LRFC.
The plaintiffs' claim against the LRFC is governed by the Municipal Employee Relations Act, General Statutes §§ 7-460 to7-479. Under said act, "the state board of labor relations is given the power and authority to determine whether a position is covered by sections 7-467 to 7-477, inclusive, in the event of a dispute between the municipal employer and an employee organization. General Statutes § 7-471 (2). The board of labor relations is further empowered to resolve questions as to whether a practice prohibited by sections 7-467 to 7-477, inclusive, has been committed by a municipal employer . . . . General Statutes § 7-471 (4). If the board of labor relations determines that a prohibited practice has been or is being committed, it shall . . . issue and cause to be served on the party committing the prohibited practice an order requiring it or him to cease and desist from such prohibited practice, and shall take such further affirmative action as will, effectuate the policies of sections 7-467 to 7-477. . . ." (Internal quotation marks omitted.) Sampietro v. Board of Fire Commissioners,200 Conn. 38, 42-43, 509 A.2d 28 (1986).
"We have frequently stated that `[w]hen an administrative remedy is provided by law, relief must be sought by exhausting this remedy before resort to the courts.'" (Citations omitted.)Sampietro v. Board of Fire Commissioners, supra, 200 Conn. 42. "`The doctrine of exhaustion [of administrative remedies] is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions. To allow a party . . . to bypass the entire process . . . would be to interject an unnecessary and potentially confusing element into an otherwise well-defined area of the law.'" Connecticut Mobile Home Assn., Inc. v.Jensens's, Inc., 178 Conn. 586, 591, 424 A.2d 285 (1979), quoting CT Page 6623Connecticut Life Health Ins. Guaranty Assn. v. Jackson,173 Conn. 352, 358-59, 377 A.2d 1099 (1977).
In the present case, the LRFC is a municipal employer, as defined by the Municipal Employee Relations Act. The LRPDA is an employee organization and its members are employees of the volunteer company. Further, the LRPDA has been designated by the state board of labor relations as the representative of the fire company employees. Article I, the recognition clause, of the labor agreement between the LRFC and the LRPDA, states as follows: "The Company hereby recognizes the Union/Association as the exclusive representative and bargaining agent for the paid professional fire fighters of the Company. In addition, the Company and the Union/Association do hereby recognize the Association for working out the terms and working conditions for the contract." The signatories to this contract are the LRFC president and chief, and the respective presidents of Local 786 of the IAFF and the LRPDA.
Although the company may have failed to bargain collectively, the plaintiffs have not filed an unfair labor practice claim with the state board of labor relations. The "orderly process of administrative adjudication and judicial review . . . requires that the plaintiff seek his remedy before the agency charged with administration of the Municipal Employee Relations Act." (Citation omitted; internal quotation marks omitted.)Sampietro v. Board of Fire Commissioners, supra, 200 Conn. 43. Because the plaintiffs have not exhausted their administrative remedies, this court lacks jurisdiction to decide whether the company has failed to bargain collectively.
The LRPDA shares its bargaining agent status with Local 786 of the IAFF. Local 786 of the IAFF represents the interests of the downtown fire fighters and it is the downtown fire fighters whose excess numbers it must protect against lay-offs. The union, therefore, has a conflict with regard to the interests of the LRPDA. It may well be that an action lies against the union for an unfair labor practice. Even if the union were a party to this action, however, this court would not have jurisdiction because pursuant to the Municipal Employee Relations Act this issue must first be heard by the state board of labor relations.
Although the Municipal Employee Relations Act applies to the plaintiffs' claim against the LRFC, it does not apply to the plaintiffs' claim against the city. The Municipal Employee CT Page 6624 Relations Act does not apply because the city is not a party to the plaintiffs' collective bargaining agreement with the LRFC. The Municipal Employee Relations Act only proscribes the conduct of employers, including their representatives or agents, and em ployee organizations. General Statutes § 7-470. Thus, this court has jurisdiction to decide whether the city has interfered with the plaintiffs' collective bargaining agreement with the LRFC.
The court finds that because the city held consolidation discussions with representatives of the LRPDA, the LRFC and Local 786 of the IAFF in the presence of Romaniello, its president, the city did not interfere with the collective bargaining relationship between the company and its professional fire fighters.
The city's threats to use the budget process to obtain the consent of the LRPDA to its conditions may have interfered with the company's ability to collectively bargain with its own employees. Furthermore, by stationing Engine 6 at Station 2 the city may very well have interfered with the provisions of Article XXVII of the collective bargaining agreement which asserts the LRFC's right "to determine all matters affecting the operation of the company, including but not limited to the right to direct and control the firefighting force." The proper party to assert claims of this type is the LRFC.
For the foregoing reasons, the court declines to enjoin the defendants from interfering with the collective bargaining relationship between the company and the association; the court, however, enjoins the defendants from withholding duly appropriated funds and from failing to appropriate sufficient funds to provide the necessary level of fire protection to the residents of Long Ridge. No city funds issued to the LRFC for fire protection services are to be used for social functions of the membership.
Sandra Vilardi Leheny, J.