(No. 53599.—

JAMES BAGLEY *et al.*, Appellees, v. THE BOARD OF EDUCATION OF SENECA COMMUNITY CONSOLIDATED SCHOOL DISTRICT NO. 170, Appellant.

*Opinion filed April 17, 1981.*

Hoffman & Mueller, of Ottawa (George Mueller, of counsel), for appellant.

Drach, Terrell & Deffenbaugh, P.C., of Springfield, for appellees.

MR. JUSTICE MORAN delivered the opinion of the court:

The circuit court of La Salle County awarded plaintiffs, three tenured school teachers, base salary increases passed by the defendant, the board of education of Seneca Community Consolidated School District No. 170, for the 1975-76 academic year. The appellate court, in a two-to-one decision, affirmed, holding that classification of teachers on the basis of their signing individual contracts was arbitrary, unreasonable and capricious. 83 Ill. App. 3d 247.

There is but one question for review: Under the facts of this case, are tenured teachers who refused to sign a contract of employment entitled to the same salary as those teachers who executed such contract?

On April 29, 1975, the defendant held a board meeting. According to the minutes of that meeting, the board passed a motion "that a salary offer of $9,000 (base) be made to the teaching staff and that individual contracts be issued and that they be returned before the end of the 1974-75 school term." On April 30, individual contracts were mailed to all teachers in the district. Each contract contained a dollar amount computed on a base salary of $9,000. A letter accompanying the contracts stated: "With this bulletin you will receive two copies of your teaching contract for next school year. Salaries are based on a new base pay schedule of $9,000 adopted by the Board of Education." The letter also provided, "Contracts are being issued to all teachers even though it has been suggested that contracts are not necessary for teachers on tenure."

The three plaintiffs, James Bagley, Kendra Olson, and Marcia Slaboch, all tenured teachers, declined to sign the individual contracts. On September 5, 1975, 11 days after the start of the 1975-76 school term, plaintiffs received written notice that they were to be paid according to their former base salary of $8,500. Superintendent Nolan subsequently informed them that they did not receive the $500 base salary increase because they refused to sign the contracts sent to them in the spring. On February 5, 1976, the board passed a motion "to raise the base pay for the 1975-1976 school year to $9,250.00 and to pay it retroactively in one lump sum." At a board meeting on March 4, 1976, plaintiff Bagley asked about "the retroactive pay the Board had passed at their February meeting." President Claggett of the school board responded that "they would receive these checks on March 15, 1976." Plaintiffs never received the $250 amount. During the 1975-76 school year, plaintiffs performed the same duties as the tenured teachers who were given the increase in base salary.

In arguing their positions, plaintiffs and defendant cite

this court's recent opinion in *Bond v. Board of Education* (1980), 81 Ill. 2d 242, and the appellate court decisions in *Davis v. Board of Education* (1974), 19 Ill. App. 3d 644, and *Littrell v. Board of Education* (1977), 45 Ill. App. 3d 690. In *Littrell,* the school board adopted a salary schedule for the ensuing school year. On the first day of that term, the superintendent of schools distributed contracts to the teachers for their signatures. Unlike contracts prepared in previous years, the contracts contained a dollar amount according to the schedule that had been adopted by the board. The contracts did not contain a no-strike clause. At the time the teachers were given the contracts they were informed that refusal to sign would result in being paid according to the terms of the previous year's contract. The court found that, under those facts, there was no consideration for the contract. The signing teachers were not subject to any additional obligations over those of the nonsigning teachers. The court held that the action of the board in paying the nonsigning teachers less than other tenured teachers of like experience and education for performing similar duties simply because they did not execute the written contracts was arbitrary, capricious and unreasonable. 45 Ill. App. 3d 690, 699.

In *Davis,* 79 days prior to commencement of the school term, the school board sent a contract to all teachers in the district, providing for an increase in salary and containing a no-strike provision. The contract thus assured the board in advance that those who signed would report for work at the commencement of the fall term (see Ill. Rev. Stat. 1975, ch. 122, par. 24—14) and that no work stoppage would occur during the school year. About one month later, the teachers who had not yet returned the contracts were sent a letter informing them that, if they did not sign the contract, they would be paid the previous year's salary. This occurred more than one month prior to the start of the school year. The court held

that the teachers who returned to work without signing opted not to sign and thereby received less than those tenured teachers who executed the new contract. The court concluded the salary distinction was not arbitrary, capricious or unreasonable. The court noted, parenthetically, that those who refused to sign declined to obligate themselves to the terms and conditions imposed upon those who did sign.

In *Bond,* 90 days before the commencement of the school year, the school board sent individual contracts to its tenured teachers. The contract allowed each teacher 10 days in which to sign, and informed them that both signers and nonsigners would retain tenure rights, that no teacher was required to sign, and that nonsigners could continue employment under the provisions of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 1–1 *et seq.*). The contract contained a no-strike clause. Each contract offered a salary increase as set forth on an attached schedule. An accompanying letter informed the teachers that nonsigners would receive the same salary as the previous year. This court first found that, under the facts of the case, the contract contained consideration. The court then held the classification between signers and nonsigners to be reasonable because the nonsigning teachers "avoided a personal commitment to a consideration which was of practical benefit to the defendant."

The case before us differs in one significant aspect from *Bond, Davis* and *Littrell.* In all those cases, when the teachers received a contract, they were simultaneously, or shortly thereafter, notified that if they failed to sign, they would be paid the previous year's salary. Although a reading of the opinions is not completely dispositive, it appears that, in those cases, the board made receipt of the higher salary contingent upon signing the contract. Here, however, the minutes of the April 29 meeting and the letter accompanying the contract clearly indicate that a

$9,000 base salary was adopted unilaterally. The board did not condition the $9,000 salary offer upon the teachers signing the contract. According to the record, plaintiffs were not informed until September 5 that they would not receive a salary increase that was adopted for all tenured teachers.

In *Richards v. Board of Education* (1960), 21 Ill. 2d 104, 109, this court stated:

"[I] t is clear that a school board has discretionary control over the salaries of its teachers, subject only to any limits expressly fixed by the School Code and to constitutional prohibitions against actions that are arbitrary, discriminatory and unreasonable, or based upon an improper classification."

In the instant case, the board adopted a new base salary that was not contingent on teachers signing a contract. Then, after returning to work, the teachers were notified for the first time that they would not receive the new base salary simply because they failed to sign the contracts. We find the action of creating a salary distinction based on a condition that was imposed subsequent to the unconditional adoption of the new base salary to be arbitrary, capricious and unreasonable.

Defendant argues that the contract provided sufficient consideration to allow the board to differentiate in salary. Even had we found that the new base salary was conditioned upon signing a contract, we would disagree with defendant's contention. The totality of each contract consisted of the teacher's name, the duration of the employment, the starting date, the annual salary computed on a $9,000 base, and a notation that the salary was pending final agreement with reference to the minutes of a future meeting.

This court, in *Bond*, after finding that a no-strike clause constituted consideration, held that a salary dis-

tinction between signing and nonsigning teachers was not unreasonable if, by not signing, the teacher avoided a personal commitment that was of practical benefit to the school board in its planning functions. In that case, the combination of requiring that the contracts be returned well in advance of the 60-day period (Ill. Rev. Stat. 1975, ch. 122, par. 24—14) and the presence of a no-strike clause aided the school board in its total planning scheme and supplied the necessary consideration. The board was able to determine more than 60 days in advance of the school year which teachers would return, as well as obtain a personal commitment for continued, uninterrupted employment. Here, the salary distinction between the signing and nonsigning teachers was arbitrary, capricious and unreasonable.

For the above-stated reasons, the judgment of the appellate court is affirmed.

*Judgment affirmed.*