Walter Eugene BUXTON and Mary Ann
Buxton, Respondents,

v.

Robert HARSH and Betty J.
Harsh, Appellants.

No. WD 32074.

Missouri Court of Appeals,
Western District.

March 16, 1982.

C. Christy Barton, Jefferson City, for appellants.

Channing D. Blaeuer, Moberly, for respondents.

Before CLARK, P. J., and MANFORD and KENNEDY, JJ.

CLARK, Presiding Judge.

Plaintiffs Buxton commenced this suit seeking construction of a real estate sale contract between them as sellers and Robert Harsh as buyer. The suit also asked judgment for the balance found to be due Buxtons under the sale contract and for damages. After a bench trial, judgment was entered for the Buxtons, and Robert Harsh and Betty, his wife, appeal. Reversed.

Buxtons, husband and wife, were the owners of farm acreage in Randolph County. On November 30, 1976, they contracted to sell some ninety acres of the tract to Robert Harsh for $70,000.00. Payment terms included $10,000.00 at the signing of the contract and $5,000.00 March 1, 1977. At the time, the property was encumbered by a deed of trust securing a note to one Meyers. The contract required Harsh to assume that obligation paying $2,000.00 and interest annually to Meyers. The balance was payable in annual installments of $3,400.00 and interest to the Buxtons, apparently for a period of five years. In the contract language "after the fifthe [sic] payment is made there is to be a balloon payment to pay off in full the contract for deed. The first payment is due on November 30, 1977."

Neither buyer nor the sellers were represented by counsel when the contract was prepared by a real estate agent of the United Farm Agency, Inc. The contract was ambiguous in many respects and reflects deficiencies in draftsmanship by the author of the document. It is, however, deducible from the contract, and the parties appear to be in agreement, that execution and delivery of a deed to Harsh was to be deferred. The contract provided that Harsh was to receive a "Contract For Deed" on November 30, 1976, the same date as that on which the sale contract was signed. No explanation appeared as to what additions to the rights and obligations of the parties would be set out in this document or why a second contract of the same date was needed. No such contract was ever, in fact, made and it is there that the dispute generating this suit originated.

Harsh entered into possession of the property on November 30, 1976. He paid the $10,000.00 deposit at the signing of the sale contract and the installment of $5,000.00 due March 1, 1977. Annual payments to Meyers and to the Buxtons were remitted between November 1977 and November 1979 with the result that as of the date judgment was entered, Harsh had paid $33,200.00 and interest. Of the original contract price amounting to $70,000.00, $12,000.00 remained due the first mortgage note holder Meyers, and $24,800.00 was owed to Buxtons.

After the sale contract was made in 1976, examination of the title disclosed certain defects which rendered the Buxtons' title unmerchantable. A suit to reform prior deeds on the ground of mistake followed and a judgment was ultimately rendered September 21, 1977. Thereafter, the subject of the contract for deed surfaced at which point the Buxtons and Harsh were represented by attorneys. The language of an acceptable contract for deed was not agreed, in part because Buxtons required a provision that Harsh could not assign his interest in the property without paying in full the balance due Buxtons.

In March of 1978, Robert Harsh and Betty J. Harsh entered into a contract for deed with parties named Martin selling to them the interest of the Harshes in the subject property. Payments were to coincide with

obligations under the previous sale contract between the Buxtons and Harsh, the intent being that title would pass to the Martins when payment was completed and the Buxtons were obligated to execute and deliver their deed under the original sale contract. An escrow for receipt and delivery of payments and deeds was provided. Upon learning of this transaction, the Buxtons protested that no sale could be negotiated unless they were paid in full. This action to construe the agreement and to compel payment acceleration followed.

By its judgment, the trial court found the above facts and also found that the sale contract of November 30, 1976 included the implicit agreement between the Buxtons and Harsh that a contract for deed to be entered into between them would be "in the usual form." The court further held that the usual form of a contract for deed under the custom and practice in the area included a provision requiring approval of the seller before an assignment could be made by the buyer or, in the alternative, the seller could demand full payment of the purchase price. Upon this construction of the contract between the Buxtons and Robert Harsh, the court entered judgment against Robert and Betty J. Harsh for $24,800.00 and interest from November 1979 and directed that the Buxtons execute and deliver a deed.

In several points on this appeal, the Harshes contend the trial court erred in engrafting additional provisions to the contract by application of the doctrine of custom and usage. They also protest that judgment against Betty J. Harsh is not supported by any evidence that she participated in the real estate purchase transaction with the Buxtons. Because we agree with appellants as to both issues and thus dispose of the appeal, it is unnecessary to consider other points among the seven they raise.

Plaintiffs' petition seeking acceleration of the payments not yet due under the sale contract acknowledged that no agreement affording this right to the Buxtons had been explicitly made. They based their claim on the contention that having agreed to a contract for deed as the vehicle for the real estate transaction, Harsh necessarily agreed also that the contract would include terms customarily contained in such documents. The Buxtons then undertook to establish that custom and usage where contracts for deed were used indicated the inclusion of acceleration clauses upon resale by the buyer. Evidence on this point consisted of testimony by officers of banks and a savings and loan association in Moberly, all of whom produced real estate note and deed of trust forms then current.

■ Missouri cases hold that customs and usage may become part of a contract where the custom is referred to for the purpose of showing the intention of the parties not expressed in the contract. *State v. Nangle*, 405 S.W.2d 501, 504 (Mo.App. 1966). A practice in order to become a custom must be definite, fixed and reasonable and must exist for a sufficient length of time to have been known by the parties involved. *Leonard v. Dougherty*, 221 Mo. App. 1056, 296 S.W. 263 (1927). To be of binding effect, the particular custom or usage must be shown to have been known by the party sought to be charged or the custom must be so widespread and general that knowledge is imputed. *Murphy v. Reed*, 193 S.W.2d 947, 949 (Mo.App.1946). Usages and customs are useful in the interpretation of a contract made with respect thereto, but they cannot make a contract where there is none. *State ex inf. Crow v. Atchison, T. & S. F. Ry. Co.*, 176 Mo. 687, 75 S.W. 776, 780 (banc 1903). The effect of a custom on contract obligations depends on the existence of an actual contract. A custom is not a substitute for a contract. *Kohn v. Cohn*, 567 S.W.2d 441, 447 (Mo.App. 1978).

■ The doctrine of custom and usage was not available to bind Harsh, under the facts and evidence in this case, to the accelerated payment obligation which the monetary judgment in favor of the Buxtons requires. In the first place, there was no contract for deed to which a custom and practice would be applicable. The concept of custom and usage requires that the par-

ties have entered into a contract which either has omitted a provision or has expressed the agreement uncertainly. Resolution of ambiguity or unintentional omission is then accomplished by determining the actual intent of the parties at the time through the assumption that a prevalent custom was inherent in the contract although not expressed. Here, custom and usage would be applicable to interpretation of the sale contract, but not as to the contract for deed which was never consummated. The doctrine cannot be employed to create a contract where none exists.

Secondly, even if it be assumed that the content of the contract for deed could originate in proof of custom and usage, no such proof was offered in this case. The witnesses called by Buxtons testified only as to the content of notes and deeds of trust. None expressed any familiarity with transactions involving a contract for deed. In real estate loans, it is quite apparent that the secured position of a seller under a contract for deed where the seller retains title is entirely different from that of the beneficiary of a deed of trust who has conveyed title and must resort to foreclosure to regain the property. There was no evidence that practice under notes and deeds of trust is followed where a contract for deed is used and no evidence at all of custom and usage in common provisions for contracts for deed.

Finally, the Buxtons failed to offer any evidence that Harsh was acquainted with custom and usage in Randolph County when a contract for deed is prepared. The significant feature of the custom and usage doctrine is that knowledge of the practice gives substance to the inference that the contracting party must have intended to agree in accordance with the custom. If the custom is unknown to the party and is not so general that acquaintanceship with the custom is presumed, no inference that the party contracted with a view to accepting the custom may be drawn. The Harshes are residents of Iowa. They were not called as witnesses and they did not testify at trial. Buxtons offered no evidence even arguably showing knowledge by the Harshes of the custom asserted or that it was a practice of widespread and general acceptance.

For the reasons given, the judgment of the trial court must be reversed because it is not supported by any substantial evidence and is an erroneous application of the law. Additionally, it is observed that the judgment against Betty J. Harsh is supported by no evidence whatever. The real estate sale contract names only Robert Harsh as buyer and only he signed. The pleadings denied participation by Betty in the transaction. For all that appears in this record, Robert Harsh may have been unmarried at the date the sale contract was signed. Even by inference there is no evidence under which Betty J. Harsh is obligated to payment by reason of the contract under which Buxtons brought this suit.

The judgment is reversed.

All concur.