William (Bill) ELAM, Oliver Tex Edwards, Robert Thornsberry, Bradley Watkins, on behalf of themselves and all other teachers in the Waynesville R–VI School District similarly situated, Plaintiffs-Appellants,

v.

WAYNESVILLE R–VI SCHOOL DISTRICT OF PULASKI COUNTY, Missouri: Paul Shultz, Larry Bench, C.A. Anderson, Kenneth Foster, Jim Bales and William C. Morgan, as members of the Board of Education of said School District, Defendants-Respondents.

No. 13374.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 28, 1984.

John W. Inglish, James W. Riner, Inglish & Riner, P.C., Jefferson City, for plaintiffs-appellants.

W.H. Thomas, Jr., Routh, Thomas & Birdsong, P.C., Rolla, for defendants-respondents.

MAUS, Presiding Judge.

In this class action the plaintiffs-teachers asked the circuit court to declare invalid the action of the Waynesville R–VI School District terminating longevity salary increments to teachers who do not reside in the District or on Fort Leonard Wood. The class consists of teachers of the District with the following common characteristics. Each was first employed before July 1, 1970. Each had been continuously employed to the time of trial. Each, on July 1, 1970, resided outside the District and had done so continuously to the time of trial. Each had, until the school year of 1980–81, been paid longevity increments in accordance with the salary schedule provisions hereafter outlined.

Upon making extensive findings of fact and conclusions of law the circuit court upheld that termination. Only a statement of ultimate facts supported by the evidence is necessary for disposition of the issues presented by the plaintiffs.

The District is a six-director District. § 162.211. By a resolution of March 13, 1967, a salary schedule for 1967–68 was approved with an increment of $125 for each five years service in the system. By a resolution of March 23, 1970, Contract Appendix A (Contract Clauses), B (Salary Schedule) and C for 1970–71 were approved. Among the Rules and Regulations in Appendix A was a provision that teachers employed for the first time after the 1969–70 school year "must live in the school district to be eligible" for the increment. The salary schedule contained a provision to the same effect. Beginning in 1971 the increment was changed to $150 for each four years of service.

On April 13, 1981, on behalf of the District, a letter of intent was mailed to and received by each teacher. The letter, among other things, advised each teacher his indefinite contract would be modified by a new salary schedule to be adopted at a later date. It further stated the teacher should return an attached letter by April 30, 1981, to indicate acceptance of employment for 1981–82. It also stated Contract Appendix A, B and C would continue to be a part of the indefinite contract.

By resolution adopted May 18, 1981, the District modified the previous salary schedule by an increase of "10 percent on total salary." A separate resolution modified the District's policy to provide that if personnel live out of the District they would not be eligible for the longevity salary increments. It was stipulated that beginning July 1, 1967, through June 30, 1981, the longevity salary increment provisions were a part of the salary schedules annually adopted. When adopted, those salary

schedules became a part of the indefinite contract.

By two copies of a letter dated May 19, 1981, the District advised each teacher of the change in regard to the salary increments. The teacher was asked to provide information on the copy concerning his place of residence for the past five years and return it to the personnel office. Within a few days each teacher received a form entitled "Indefinite Contract Modification for Permanent Teachers." The form as completed provided that the indefinite contract between the named teacher and the District was modified in two particulars. The first provided the date of beginning and number of days of the next term. The second designated the annual compensation for the next term. That compensation was as provided by the resolution of May 18, 1981. For the plaintiff, it was determined by the salary schedule for 1980–81, plus 10 percent but with no longevity increments.

All of the members of the class executed and returned the Indefinite Contract Modification. Two teachers testified they initially returned that form with comments thereon protesting the termination of the longevity increments. When they were told the documents in that form were unacceptable, they executed and returned the Indefinite Contract Modification without alteration. In at least two instances, it was returned with a separate letter containing such a protest.

Six teachers testified. They stated they returned the executed modification because they understood they had to have on file with the District a current written contract. A copy of the Contract Clauses approved July 1, 1980 so provided. Three of those six testified they were familiar with the teacher tenure law. They were aware that unless a different schedule was adopted by April 15, their employment continued under the salary schedule of the preceding school year. Each of the six testified that he or she was aware of the termination of longevity increments, that the Indefinite Contract Modification provided for an annual salary based on the new salary schedule, and that such salary was higher than the prior year, but did not include longevity

increments. They were paid the salary so provided. Counsel for the class stipulated each member would testify substantially on each issue as did those who appeared. By resolution adopted April 15, 1982, the residency requirement was adopted for the year 1982–83.

As stated, the trial court made extensive findings of fact and conclusions of law. Its judgment was that the action of the District in so restricting the longevity increments was valid. It further adjudged that such termination was effective for 1981–82 and 1982–83. The plaintiffs do not contend any finding of fact is not supported by the evidence. They do contend the trial court erred in its conclusions of law. Those findings and conclusions will not be fully or separately stated. They will be noted as necessary in the consideration of the plaintiffs' points of alleged error.

The soundness of the plaintiffs' first point is basic to six of their seven points. That basic proposition as stated in their first point is:

The lower court erred in finding that the incentive increments which plaintiffs had earned by past employment within the district and for which they had been paid in the past were not vested but were subject to adoption or rejection each year by the district because a contract existed between the plaintiffs and the defendant which required defendant to pay the incentive increments for so long as plaintiffs were employed or until the contract was modified by mutual consent.

In support of this point they argue in terms of contract, an offer by the District, accepted by the plaintiffs. They concede, "Defendant could withdraw its offer as to future increments whenever it desired." Appellants' Brief page 21. But, they argue, "At the time each plaintiff completed the number of years required to obtain an additional increment, that increment became vested. The bargain was completed and the plaintiff became entitled to that incentive increment for so long as he continued in the employment of the district." Appellants' Brief page 19.

Section 162.261 in part provides: "The government and control of a six-director school district ... is vested in a board of education." Section 171.011 in part provides: "The school board of each school district in the state may make all needful rules and regulations for the organization, grading and government in the school district." See *Willis v. School Dist. of Kansas City,* 606 S.W.2d 189 (Mo.App.1980). It is well recognized, "[t]hese broad powers include the matter of tenure (employment and termination of employment, and the fixing of compensation) subject to the guidelines of the statute and to due process of law considerations, and subject also that in the exercise of its powers a board may not act in an unreasonable, arbitrary, capricious or unlawful manner." *School Dist. of Kansas City v. Clymer,* 554 S.W.2d 483, 487 (Mo.App.1977). Also see *Meloy v. Reorganized School Dist., Etc.,* 631 S.W.2d 933 (Mo.App.1982); *Parkway School Dist. v. Provaznik,* 617 S.W.2d 489 (Mo.App. 1981).

Section 168.106 in part provides: "The contract between a school district and a permanent teacher shall be known as an indefinite contract ... ." Section 168.108 requires that "[e]very indefinite contract shall contain the following provisions in substantially" the form set forth in that section. The pertinent part of § 168.110 provides a district may modify an indefinite contract annually on or before the 15th day of April by "[f]ixing the amount of annual compensation for the following school year as provided by the salary schedule adopted by the board of education applicable to all teachers." Section 168.112 provides an indefinite contract may be modified at any time by the mutual consent of the parties thereto.

Contract clauses adopted by the District in March, 1970 and July, 1982, pertaining to the salary schedules, are in evidence. What is apparently a part of such contract clauses approved in July, 1980 is also in evidence. It is not clear if those contract clauses are merely representative of annual clauses, or if the earlier clauses remained in effect until modified or replaced by subsequently adopted clauses. By im-

plication, the parties indicate the latter to be true.

It is significant that the contract clauses adopted in 1970 and the contract clauses adopted in 1980 contain paragraphs to the following effect. "6. *How Long This Schedule Effective.* This salary schedule is to be in effect until changed by the board of education.... 9. *Board Right to Adjust Schedule.* The board of education reserves the right to adjust this schedule at any time it considers such adjustment advisable—except that salaries in teachers' contracts already signed would not be lowered."

Section 432.070 in part provides that any contract of a school district shall be in writing. Decisive is the failure of the plaintiffs to produce any contract language that purports to require the District to pay a longevity increment to any teacher for any year other than the year for which the salary schedule was adopted. *Neal v. Junior College Dist. of E. Cent. Mo.,* 550 S.W.2d 580 (Mo.App.1977); *Goodyear v. Junior College Dist. of St. Louis,* 540 S.W.2d 621 (Mo.App.1976).

The plaintiffs' position is not supported by cases they cite. In *Logue v. City of Carthage,* 612 S.W.2d 148 (Mo.App.1981), an employee had accumulated sick leave by reason of past service under rules then in force. It was held the city could not by a retroactive rule change or abolish sick leave accumulated before the adoption of the rule.

The plaintiffs state that *State ex rel. Marsh v. Lum,* 95 Conn. 199, 111 A. 190 (1920), is almost identical to this case. In *Lum,* during the term the school committee voted to pay each teacher an additional $150 to induce them not to quit. The treasurer contended the teachers were bound by contract and the extra $150 was a gift prohibited by a constitutional provision. The plaintiffs rely upon the fact the Supreme Court of Connecticut held that the forebearance of the teachers in not quitting was a valid consideration. They neglect to emphasize the fact that under their initial contract the teachers reserved the right to

quit upon 30 days notice. Also see *Cotter v. City of Chelsea*, 329 Mass. 314, 108 N.E.2d 47 (1952). *Godbey v. Roosevelt Sch. Dist. No. 66, Etc.*, 131 Ariz. 13, 638 P.2d 235 (1981), held that a district could not retroactively require a doctor's certificate for sick leave taken before the adoption of a resolution requiring such a certificate. None of the authorities considered demonstrate the trial court erred in any respect. *Lettieri et al. v. Scranton School District, et al.*, 4 Pa.D. & C.2d 177 (1954) was a decision by a trial court. It is contrary to the authorities hereafter cited and is not persuasive.

The action of the trial court is supported by principles of contract and decisions of other states dealing with statutes similar to those of Missouri. In *Rible v. Hughes*, 24 Cal.2d 437, 150 P.2d 455 (1944), 154 A.L.R. 137, it was expressly held that increments for additional education may be terminated. Also see *Brown v. Hanford Elementary School*, 263 Cal.App.2d 170, 69 Cal.Rptr. 154 (1968). *Greenway v. Board of Education of City of Camden*, 129 N.J.L. 46, 28 A.2d 99 (1942) held that a school district could properly terminate longevity increments. In affirming that opinion of the Supreme Court, the Court of Appeals of New Jersey noted an argument similar to that made by the plaintiffs. However, the court said:

> The local boards are not under a statutory duty to lay down a schedule of salary increments. Indeed, increments as such have no statutory recognition. That is a device of local policy adopted in the exercise of the granted general managerial power....
>
> ....
>
> ... A rule providing for increments is a mere declaration of legislative policy that is at all times subject to abrogation by the board in the public interest.

*Greenway v. Board of Education*, 129 N.J.L. 46, 29 A.2d 890, 891–892 (1943), 145 A.L.R. 404. To the same effect is *Offhouse v. State Board of Education*, 131 N.J.L. 391, 36 A.2d 884 (1944), appeal dismissed, 323 U.S. 667, 65 S.Ct. 68, 89 L.Ed. 542. In *Taft v. Bean*, 24 Ariz.App. 364, 538 P.2d 1165 (1975), the contracts between the district and the teachers provided, "[a] teacher who attains tenure will be granted a double increment when he is employed for the fourth consecutive school year on a full time basis." That contract provision remained in force between March 15, 1969, and March 15, 1973, when such provision was terminated. It was held that the double increment provision was not indefinite and "contracts, which were entered into for prior years and which provided for such an increase for teachers achieving tenure, were not relevant with regard to contract which was entered into for subsequent 1973–1974 school year but which did not provide for such an increase." *Taft v. Bean*, supra, 538 P.2d at 1165. "A school board must have the opportunity each year to review the needs of the district before entering into new contracts with the teachers." *Taft v. Bean*, supra, 538 P.2d at 1167. Persuasive is a recent case involving successive three year contracts negotiated by a teachers' bargaining agent. The initial contract provided for a 3 percent increment upon 15 years service with the district. During the term of that contract two teachers attained that increment. Yet, it was held those increments were not vested rights and terminated when not included in the succeeding contract. *Rouse v. Anchorage Sch. Dist.*, 613 P.2d 263 (Alaska 1980).

■ The authorities cited cast doubt upon the power of a district to expressly contract to pay any increment for an indefinite period of time. However, that issue need not be considered. In *Revelle v. Mehlville School Dist. R–9*, 562 S.W.2d 175 (Mo.App.1978), the court held that regulations restricting the statutory power vested in the school district to refuse to renew a probationary teacher's contract were invalid. In none of the contracts, modifications of contracts, salary schedules or other documents in this case was there any contractual provision purporting to limit the power of the District to restrict the longevity increments. Paragraphs 6 and 9 expressly reserve that right to the District. The plaintiffs' first point is denied.

The plaintiffs' second point is that the trial court erred in concluding "that the

contractual provisions between defendant District and plaintiffs regarding the incentive increments were not a part of each plaintiff's indefinite contract." By this point the plaintiffs apparently have reference to the following conclusion of law entered by the trial court. "The Court finds that the additional monies paid to plaintiffs for having taught within the District for five years was not vested and had not become a part of their indefinite contract ... ."

■ In argument of the point, they rely upon the contract clauses providing the increments are a part of the salary schedule. They ignore the paragraphs expressly reserving to the District the right to change the salary schedule. By the language referred to, the trial court did not conclude the increments were not at one time a part of the salary schedule and not a part of the indefinite contracts. By that language, the court recognized the District's right to change the salary schedule. That is emphasized by the last sentence of the paragraph of the conclusions in question: "The Court finds that such additional monies [increments] were subject to adoption or rejection each year by the District and these additional monies [increments] accrued one year at a time." The plaintiffs' second point is denied.

■ By point III plaintiffs contend the trial court erred in concluding each plaintiff had to choose between a contract incorporating the 1980–81 salary schedule (including the increments) and a contract incorporating the 1981–82 salary schedule (excluding the increments, but providing a 10 percent increase). To unilaterally modify the indefinite contracts, by adopting a new salary schedule, the District had to act on or before the 15th day of April. § 168.110. When it failed to do so, the indefinite contract then in force continued in effect. § 168.106. That indefinite contract was then subject to modification only by mutual consent. § 168.112.

Nevertheless, "[i]t is plaintiffs' contention that each permanent teacher in the district was entitled to receive this ten percent increase in base salaries whether they agreed to any change in their indefinite contract or not ... ." Appellants' Brief page 28. The cases cited by the plaintiffs to support this proposition are factually not applicable. The position of the plaintiffs is not comparable to an improperly terminated tenured teacher. *Redman v. Department of Education*, 519 P.2d 760 (Alaska 1974). Nor to a re-assigned tenured teacher being paid the lower salary carried by the new position. *Sorlie v. School Dist. No. 2*, 667 P.2d 400 (Mont.1983). Compare *Glanville v. Hickory County Reorg. Sch., Etc.*, 637 S.W.2d 328 (Mo.App.1982). Nor to a full-time teacher being paid less than the minimum salary for such a teacher. *Marvel v. Coal Hill Public School Dist.*, 276 Ark. 369, 635 S.W.2d 245 (1982). Nor to circumstances under which the execution of a new contract was not required to modify an indefinite contract. *Bagley v. Board of Ed., Etc.*, 84 Ill.2d 474, 50 Ill.Dec. 716, 419 N.E.2d 1165 (1981).

The plaintiffs' petition alleged the termination was "invalid as not having been timely done since Section 168.110, RSMo, requires any modification to be made on or before April 15." The three teachers who testified on the subject stated they knew that because the board had not acted by April 15, their employment continued under the existing indefinite contract. The trial court expressly found that to be true in respect to all of the plaintiffs. In view of the stipulation concerning the testimony of the six teachers being typical, there was evidence to support that finding of the trial court. The plaintiffs do not dispute that finding.

The plaintiffs' position is more nearly comparable with the position of a resigned teacher who did not, before the start of the term, enter into a contract providing for a higher salary, but containing an onerous provision regarding resignation. "Under the statute, if a teacher on contractual continued service status does not enter into an employment contract for the coming school year, the teacher will continue under the terms of his previous year's contract." *Arduini v. Bd. of Educ. of Pontiac Tp., Etc.*, 92 Ill.2d 197, 65 Ill.Dec. 281, 441 N.E.2d 73,

76 (1982). If the District could, after April 15, unilaterally modify the indefinite contract by a higher salary schedule, it could do so by a lower salary schedule. This is contrary to the applicable statutes. Plaintiffs' third point is denied.

■ The plaintiffs next assert the trial court erred in concluding the plaintiffs were estopped from denying the modification of the indefinite contract by their acceptance of benefits prescribed by the salary schedule adopted May 12, 1981. The plaintiffs base this contention on the proposition they were automatically entitled to the higher salary prescribed by the new schedule. This contention has been found to be without merit. An estoppel in similar circumstances has been recognized. *Magenheim v. Board of Education*, 347 S.W.2d 409 (Mo.App.1961). The point is denied.

■ By their fifth point, the plaintiffs contend the trial court erred in finding they "mutually agreed" to a modification of their indefinite contracts. Each plaintiff did execute and return to the District an Indefinite Contract Modification which had been executed on behalf of the District. These contracts incorporated the new salary schedule. The plaintiffs based this point upon the fact they protested, by an accompanying letter or otherwise, the termination of their longevity increments. These protests demonstrate the plaintiffs were well aware of the modifications being affected by the Indefinite Contract Modifications. With that understanding, each plaintiff by signing and returning the tendered instrument in solemn form consented to the terms thereof. This point has no foundation.

■ The plaintiffs' sixth point is that the action of the board was a demotion within the meaning of the Teacher Tenure Act. They say this is true because they do not receive the same salary as teachers with comparable longevity living in the District. A demotion is a change in status proscribed by the Teacher Tenure Act. *Glanville v. Hickory County Reorg. Sch., Etc.*, supra. However, a demotion is defined as "any reduction in salary or transfer to a position

carrying a lower salary, except on request of a teacher, other than any change in salary applicable to all teachers or all teachers in a classification." § 168.104(2).

■ By the action of the District, longevity increments were denied to the classification of all teachers who did not live in the District. The delineation of that classification is unsatisfactory to the plaintiffs. However, it is no less a statement of a classification than a reference to all teachers who have not earned five hour credits upon an advanced degree. The action of the District was a change in salary applicable to "all teachers in a classification." It was not a demotion within the meaning of the Act.

The plaintiffs' final point is that "[t]he lower court erred in finding that the classification of teachers for compensation purposes based on their residence within or without the District was reasonable, rational and logical." To determine the issue raised by this point, it is necessary to consider the pleadings and the trial in this non-jury case.

Plaintiffs' petition alleged the action of the District was invalid only because the increments were vested and that action was a demotion. The petition in no way alleged that action was contrary to any constitutional provision or that the District adopted an unreasonable classification. Nor did the plaintiffs present evidence to establish an unreasonable classification.

However, the District presented the testimony of its superintendent. He outlined the reasons it was beneficial to the District for the teachers to reside in the District. The plaintiffs cross-examined concerning those reasons. In its conclusions of law, the trial court cited the language of *School Dist. of Kansas City v. Clymer*, supra, quoted above. It concluded there was a reasonable, rational and logical basis to require teachers to live in the District or on Fort Leonard Wood.

The basis for the plaintiffs' contention that the classification is invalid is not clear. To preserve a constitutional question, it is

necessary to: "(1) raise the constitutional question at the first available opportunity; (2) designate specifically the constitutional provision claimed to have been violated, such as by explicit references to the article and section or by quotation of the provision itself; (3) state the facts showing the violation; (4) preserve the constitutional question throughout for appellate review." *Gray v. City of Florissant*, 588 S.W.2d 722, 724 (Mo.App.1979). "A constitutional question is not presented for appellate review by mention only in the jurisdictional statement or by casual reference in the argument portion of the brief." *Pruellage v. De Seaton Corporation*, 380 S.W.2d 403, 405 (Mo.1964). The plaintiffs did not raise or preserve a constitutional question. Their last point cannot be considered as presenting such an issue.

The statutes of some states in defining the authority of a school district expressly state the action of that district must not be arbitrary, unreasonable or capricious. *Rible v. Hughes*, supra. There is no such statutory limitation in this state. It is not clear if the quoted language of *School Dist. of Kansas City v. Clymer*, supra, refers to constitutional limitations upon the actions of a school district or to a limitation that is inherent, but not expressed, in the grant of power to the district. It has been recognized the grant of power to the District is a continuation of the legislative function vested in the General Assembly. *School Dist. of Kansas City v. Clymer*, supra. That is an indication such limitation has reference to constitutional prohibitions. 78 C.J.S. Schools and School Districts § 121. This is also implied by expressions of that limitation such as the following: "The courts will not interfere with the exercise of a school district's discretion except in a case of clear abuse, fraud, or some similar conduct." *Smith v. Consolidated School District No. 2*, 408 S.W.2d 50, 53 (Mo. banc 1966). Logic dictates that this language has reference to an established constitutional standard. If that is true, this point presents no preserved assertion of error.

However, without holding the same to be required, this court will consider the point upon the basis that such limitation is inherently applicable to the action of the District. It will further consider that the limited issue was tried by consent within the meaning of Rule 55.33(b). By their brief, the plaintiffs state the validity of the classification is to be determined by the "rational basis" test. That test will be applied.

To support this point, the plaintiffs state and restate the classification has no relationship to the duties assigned to a teacher. They emphasize the actual work of a teacher is done in the classroom.

On the other hand, the superintendent, an experienced, qualified educational administrator, enumerated several reasons why it was beneficial for teachers to live in the District. Those reasons included the following. The teachers would support the local economy. Their taxes would help support the District. They would be more available for extracurricular activities. In essence, they would become a part of the community with their pupils and their parents. They would better know their pupils and their parents and "that has some rather significant value in education today."

■ The classification is not necessarily unreasonable because increments are extended to teachers who live on Fort Leonard Wood, even though that federal property is not technically a part of the District. The District operates five elementary schools and a junior high school on Fort Leonard Wood. § 171.101. Pupils and teachers alike reside on Fort Leonard Wood. In essence, it is a part of the District.

■ The rationality of residence requirements has been recognized by cases such as *McCarthy v. Philadelphia Civil Serv. Comm'n*, 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976). The validity of such a regulation has been said to be "crystal clear." *Pittsburgh Federation of Teachers, Etc. v. Aaron*, 417 F.Supp. 94 (D.C.Pa. 1976). One attacking such a classification "bears the burden of proving that the challenged regulation is irrational and he must negative every conceivable basis upon

which the rule may be justified." *Gray v. City of Florissant,* supra, at 725. Compare *Harrah Independent School Dist. v. Martin,* 440 U.S. 194, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979). Or, expressed another way, "[i]f a statutory classification is based on reason, even a poor one, and treats all persons similarly situated alike, there is no constitutional violation." *State ex rel. Dreer v. Public School Retire. Sys.,* 519 S.W.2d 290, 298 (Mo.1975). Reasonable minds could well be divided as to the rationality of this regulation and the action of the District is conclusive. *Rible v. Hughes,* supra. Measured by this criterion, the only issue raised by the plaintiffs' seventh point has no merit. It is denied and the judgment is affirmed.

HOGAN and CROW, JJ., concur.

PREWITT, J., recused.