Sandra DIAL, Respondent–Appellant,

v.

## LATHROP R–II SCHOOL DISTRICT, Appellant–Respondent.

No. 76134.

Supreme Court of Missouri, En Banc.

Feb. 22, 1994.

Charles A. Werner, St. Louis, for respondent-appellant.

Kevin L. Walden, John R. Shank, Jr., Kansas City, for appellant-respondent.

Steven L. Wright, Columbia, for amicus curiae (MSBA).

THOMAS, Judge.

This case involves the construction and interpretation of the 1990 amendments to Missouri's Teacher Tenure Act. Ms. Dial filed suit against the Lathrop R–II School District (District) contending that she was entitled to an indefinite contract containing certain terms. An indefinite contract is a contract between a school district and a permanent teacher. § 168.104(3), RSMo Supp. 1993. Both parties filed motions for summary judgment. The District appealed from that part of the circuit court's judgment ordering it to issue Ms. Dial an indefinite contract. Ms. Dial appealed from that part of the judgment holding that the District could issue a contract at the lowest step on its salary schedule. The court of appeals affirmed. Both parties sought transfer. We affirm in part and reverse and remand in part.

I.

In 1969, the General Assembly adopted the Teacher Tenure Act, sections 168.102 to 168.130, to be effective July 1, 1970. § 168.102, RSMo 1986. Subsequently, in 1977, Ms. Dial was hired by the Lathrop R–II School District.

Ms. Dial had previously taught five years in Kansas, and the District placed her at Step 6 in the "YEARS EXPERIENCE" column on the salary schedule when she began teaching at Lathrop. Ms. Dial taught part-time at Lathrop in 1977 and for the next thirteen years. Until the 1989–90 school year, Ms. Dial, and all other teachers, advanced one step each year in the "YEARS EXPERIENCE" column. All salaries were frozen for 1989–90, but all teachers advanced

two steps for 1990–91, with the result that in Ms. Dial's fourteenth year at Lathrop, she was on Step 19 of the salary schedule.

In 1990, the General Assembly amended portions of the Teacher Tenure Act including sections 168.104, 168.110, RSMo Supp.1993. *Id.* These amendments included changes in the definition of a "permanent teacher": references to full-time employment were deleted, and a provision was added specifying that part-time teachers would accrue credit toward tenure on a prorated basis. § 168.-104(4), RSMo Supp.1993.

The District offered Ms. Dial a contract to teach full-time for the 1991–92 school year. The contract was dated June 13, 1991, and stated that it was void if not returned by June 28, 1991. The contract the District offered was a probationary contract rather than an indefinite contract and was at Step 1 on the "YEARS EXPERIENCE" column.

On June 24, 1991, Ms. Dial sent a letter to the school board and the superintendent stating that she was pleased to receive a full-time contract, but expressing her concern over the fact that the contract was probationary and at Step 1. Ms. Dial returned the signed contract on June 28, 1991, along with a letter protesting the probationary status and the salary step and asking to have the matter reviewed by the District's attorney. Subsequent to June 28, 1991, Ms. Dial initialed an amendment to her contract adding $270.00 for duties as cheerleader sponsor.

On August 1, 1991, the superintendent wrote Ms. Dial a letter stating that her contract had been reviewed and was consistent with present practices. Ms. Dial filed suit on September 23, 1991.

II.

■ When an appellate court reviews a summary judgment, the court looks to the entire record to determine if there is any issue of material fact and whether the moving party was entitled to judgment as a matter of law. *See Magee v. Blue Ridge Professional Bldg.,* 821 S.W.2d 839, 842 (Mo. banc 1991). Questions of law are matters reserved for the independent judgment of the reviewing court. *House of Lloyd, Inc. v.*

*Director of Revenue,* 824 S.W.2d 914, 916 (Mo. banc 1992).

## III.

### A.

The District's first point is whether the trial court erred in holding that Ms. Dial became a permanent teacher when the 1990 amendments to the Teacher Tenure Act became effective. The District asserts that such a holding violates the state constitution by requiring a retrospective application of the 1990 amendments to section 168.104(4), RSMo Supp.1993. The District argues that Ms. Dial should not be given credit toward permanent status for the years she taught prior to the 1990 amendments.

■ Article I, section 13 of our state constitution prohibits any law "retrospective in its *operation.*" Mo. Const. art. I, § 13 (emphasis added). This prohibition applies to laws that *operate* retrospectively; that is to say, laws that are retroactive. *See Jerry–Russell Bliss v. Hazardous Waste,* 702 S.W.2d 77, 81 (Mo. banc 1985). The prohibition does not apply to laws that are retrospective in the sense that they merely look back on or contemplate the past. *See The American Heritage Dictionary* 1056 (2nd college ed. 1991) (Defining "retrospective" as "1. Looking back on, contemplating, or directed to the past.... 3. Applying to or influencing the past; retroactive."). The constitutional prohibition against laws that operate retrospectively applies if the law in question impairs some vested right or affects past transactions to the substantial prejudice of the parties. *Fisher v. Reorganized School Dist., etc.,* 567 S.W.2d 647, 649 (Mo. banc 1978). Thus, we need to consider whether section 168.104(4) is retrospective in operation, i.e. retroactive, or retrospective in the sense that it merely looks back on or contemplates the past.

### B.

■ A "permanent teacher" includes "any teacher who has been employed or who is hereafter employed as a teacher in the same school district for five successive years ... except that any teacher employed under a part-time contract by a school district shall accrue credit toward permanent status on a prorated basis." § 168.104(4), RSMo Supp. 1993. The original Teacher Tenure Act has been applied to give credit for years taught prior to 1970. *See e.g., Hirbe v. Hazelwood School Dist.,* 532 S.W.2d 848, 850 (Mo.App. 1975). The exception applying to part-time teachers was added in 1990.

Section 168.104(4) does not impair a vested right or affect a past transaction to the substantial prejudice of the parties. A vested right is more than merely an expectation grounded in anticipation that the existing law will continue. *Fisher,* 567 S.W.2d at 649. A vested right must have become a legal or equitable title to the present or future enjoyment of property or a demand, or a legal exemption from a demand, of another. *Id.*

The interest of the District in this case is more closely akin to an expectation based on an anticipation that the existing law would continue than to any type of legal or equitable title. Service of full-time teachers prior to 1970 was credited toward tenure. A change in the statute to specify the same treatment for part-time teachers could have been anticipated. The District had no vested right in withholding tenure from part-time teachers, thus there was no impairment of any vested right.

■ The statute also does not affect past transactions. A statute that does not impair a vested right is not retrospective in operation merely because it relates to or is directed to prior facts or transactions. *See Bliss,* 702 S.W.2d at 81; *Martin v. Schmalz,* 713 S.W.2d 22, 23 (Mo.App.1986). Section 168.104(4) states that teachers get credit toward tenure for years that were taught previously. The statute gives future effect to this teaching experience; it in no way changes the past teaching contracts.

Furthermore, there is no substantial prejudice to the District. The only possible negative consequence to the District is that it could have more permanent teachers than it anticipated. By definition, these part-time teachers would have taught over five years and been extended more than five contracts. The District would have had ample opportu-

nity to evaluate these teachers and make a determination of their fitness. To the extent that the District wound up with excess teachers, the Teacher Tenure Act authorizes placing teachers on leaves of absence because of a decrease in enrollment, school district reorganization, or the financial condition of the district. § 168.124, RSMo Supp.1993. Also, the District was under no compulsion to offer Ms. Dial a full-time position. The District could have left Ms. Dial as a part-time teacher and hired an additional part-time teacher, without Ms. Dial's experience or salary level, to teach the additional hours. The District will suffer no substantial prejudice.

Section 168.104(4) is not retrospective in its operation and is, therefore, not in violation of article I, section 13 of our state constitution.

### C.

The District argues that the 1990 exception removes part-time contracts from the general application of the statute. According to the District, the phrase "shall accrue" looks forward and shows that the legislature did not intend for the statute to be applied to part-time contracts so as to give credit for years taught prior to 1990.

We think a better interpretation is that the exception is simply specifying that part-time teachers receive credit toward tenure on a prorated basis as compared to full-time teachers. The phrase "shall accrue" may have been used because, at the time the amendment was drafted, it was looking to its future implementation. Furthermore, "shall" is not merely a word to describe future events but also a word of command, in this case mandating prorated credit for part-time teachers. Looking at the entire statute, we believe that the legislature intended that the statute should be applied to give part-time teachers credit toward tenure for years taught prior to 1990.

### D.

Ms. Dial had taught in the district for thirteen years at one-half to four-sevenths time at the time of the 1990 amendments to the Teacher Tenure Act. Thus, she had accrued over five years toward permanent status on a prorated basis and was a permanent teacher entitled to an indefinite contract. The trial court did not err in holding that Ms. Dial became a permanent teacher when the 1990 amendments became effective.

This point is denied.

### IV.

The District's second point is: "The trial court erred holding that the 1990 amendment to RSMo § 168.104(4) was intended to apply to pre-August 28, 1990 service." This point relied on is woefully inadequate in that it does not meet the *wherein* and *why* requirements of Rule 84.04(d) as explained in *Thummel v. King*, 570 S.W.2d 679 (Mo. banc 1978). *Id.* at 685–86. This rule violation is grounds enough to deny this point. *See Jones v. Jones*, 819 S.W.2d 773, 774 (Mo.App.1991).

However, we choose to address this point on the merits. Our analysis in part III.B. above leads us to the conclusion that the legislature intended to apply the 1990 amendments to pre–1990 service. Therefore, we find that the trial court did not err in its holding to that effect.

This point is denied.

### V.

### A.

In its final point, the District argues that, even if Ms. Dial had become a permanent teacher entitled to an indefinite contract, the indefinite contract was modified by the mutual consent of the parties. "An indefinite contract between a permanent teacher and a board of education may be terminated or modified at any time by the mutual consent of the parties thereto." § 168.112, RSMo Supp.1993.

The District asserts that, if Ms. Dial had an indefinite contract, it was to teach part-time and that she consented to a modification to the terms of the proposed full-time contract when she signed and returned it. The District contends that her protest of certain terms had no effect and, to the extent her protest was valid, it was abandoned when the

full-time contract was amended by adding $270.00 for Ms. Dial's duties as cheerleader sponsor.

### B.

The District cites *Elam v. Waynesville R–VI School Dist.*, 676 S.W.2d 880 (Mo.App. 1984), for the proposition that the protest had no effect. In *Elam*, the plaintiff teachers returned executed contracts along with letters protesting certain contract terms to the school district. *Id.* at 887. The court in *Elam* found that the protests showed that the teachers were aware of the terms and that, by signing the contracts, they consented to the terms. *Id.*

■ We think the better view is that espoused in *Long v. School Dist. of University City*, 777 S.W.2d 944 (Mo.App.1989). The protest negates any implied mutual consent to the terms that were the subject of the protest. *Id.* at 947. In this case, the contract itself states that it is not to be construed as a waiver of the rights of either party under the laws of the state. Also, Ms. Dial was operating under the threat that the contract would be void if not returned by June 28, 1991. There may have been mutual consent to a full-time contract, but there was not mutual consent to the probationary status or the placement at Step 1 on the salary scale. Therefore, the initial signing of the full-time contract did not serve as a modification as to the terms that were the subject of the protest. To the extent *Elam* is contrary to this opinion it is overruled.

### C.

■ Ms. Dial's protest was not negated by the addition of the cheerleader sponsor stipend to the contract. This $270.00 amendment was very minor in comparison to the $18,000.00 contract. This change did not address the terms to which Ms. Dial objected, and there is no indication that the addition of these duties was negotiated in response to her protest.

This point is denied.

### VI.

Ms. Dial presents only one point for review. She contends that the trial court erred in finding that Ms. Dial was not entitled to be placed at Step 20 in the "YEARS EXPERIENCE" column of the salary scale for the 1991–92 school year.

The applicable statutes do not mandate what salary steps a district must have or on which steps teachers must be placed. The step on which a teacher is placed is a matter of contract. The contract that the District tendered Ms. Dial is silent as to placement on a salary step and the rate of advance up the schedule.

■ Custom and usage may supply a term that has been omitted from a contract. *Jake C. Byers, Inc. v. J.B.C. Investments*, 834 S.W.2d 806, 817 (Mo.App.1992). Customs and usage may be incorporated into a contract to show the parties' intention which was not expressed in the contract. *Buxton v. Harsh*, 631 S.W.2d 95, 97 (Mo.App.1982). To become a custom, a practice must be definite, fixed, reasonable, and exist for a long enough time to have been known by the parties. *Id.* The custom or usage must be known to the parties involved or so widespread and general that knowledge is imputed. *Id.*

■ Under her contract with the District, Ms. Dial had moved up one step on the salary schedule every year even though she had only been working part-time. This was the procedure used with all teachers in the District. In its answers to interrogatories, the District stated that no teacher in the District, either full-time or part-time, had or was offered a contract at a lower salary step than the preceding year. Therefore, the practice of advancing one step on the salary schedule each year had become part of Ms. Dial's contract through custom and usage.

As we stated in part III.D., Ms. Dial was a permanent teacher in 1990. Therefore, her contract with the District was an indefinite contract. *See* § 168.104(3), RSMo Supp. 1993. A board of education may modify an indefinite contract in only two ways:

(1) Determination of the date of beginning and length of the next school year;

(2) Fixing the amount of annual compensation for the following school year as provided by the salary schedule adopted by the board of education applicable to all teachers.

§ 168.110, RSMo Supp.1993.

The first method is not at issue in this case. The District's placement of Ms. Dial at Step 1 was not in keeping with her years of experience and, thus, was not "as provided by the salary schedule ... applicable to all teachers" and did not comply with the second method of modifying an indefinite contract. *Id.*

The District adopted a salary schedule in which all teachers advanced one step each year on the "YEARS EXPERIENCE" column. It applied that schedule in such a way that part-time and full-time teachers all advanced at the same rate. This is not to say that the District could not adopt a policy under which part-time teachers would move up the steps of the salary schedule on a prorated basis in the same manner as they acquire tenure. But that is not the contract or the policy under which Ms. Dial was hired and has taught. Her indefinite contract can be modified only according to the statute. Ms. Dial started at Step 6 and was at Step 19 for the 1990–91 school year. Under the salary schedule as adopted and applied by the District, she was entitled to be placed at Step 20 for the 1991–92 school year.

This is the practical consequence of the fact that Ms. Dial prevailed on the tenure argument. The school board does not have the option to arbitrarily alter the terms of their employment of a permanent teacher. We have determined that Ms. Dial is a permanent teacher; as a consequence she is entitled to be placed at Step 20 on the salary schedule through the custom and usage that had been established by the treatment that all part-time teachers in the District had been afforded. We need not decide and do not decide whether a school district could prospectively modify their treatment of all part-time teachers.

We reverse as to this point and remand to the trial court with instructions to order the District to place Ms. Dial at Step 20 for the 1991–92 school year with commensurate adjustments in salary and other benefits.

## VII.

We affirm the judgment as to issuing an indefinite contract. We reverse the judgment as to the placement of Ms. Dial on the salary schedule and remand to the trial court with instructions to order the District to place Ms. Dial at Step 20 for the 1991–92 school year with commensurate adjustments in salary and other benefits.

All concur.