**J. Scott HAGELY and Mary Helen Brindell, Respondents,**

v.

**BOARD OF EDUCATION OF the WEBSTER GROVES SCHOOL DISTRICT, Appellant.**

No. 68332.

Missouri Court of Appeals, Eastern District, Division Two.

Aug. 6, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 9, 1996.

Application to Transfer Denied Oct. 22, 1996.

48

Douglas Allen Copeland, Clayton, for appellant.

Charles A. Werner, St. Louis, for respondent.

DOWD, Judge.

On remand from the Supreme Court of Missouri, the trial court reversed the Board of Education ("Board") of the Webster Groves School District's ("District") dismissal of the salary grievances of J. Scott Hagely and Mary Helen Brindell ("Teachers").[1] The Board and District appealed from that judgment. We reverse.

Teachers were employed throughout this litigation by the Board as permanent teachers with indefinite contracts within the meaning of § 168.104 of the Missouri Teacher Tenure Act, §§ 168.102–130, RSMo 1986.[2] The Board, in consultation with representatives of all the teachers in the District, establishes annual salary schedules pursuant to § 168.110. The salary schedules consist of five channels related to each teacher's educational attainment. Each channel is divided into several steps. A teacher's salary is determined by reference to the step number in the channel applicable to that particular teacher.

When determining each teacher's yearly contract, the Board follows a custom and practice that has never changed: For each year of employment, a teacher progresses one step within their current channel. By earning an advanced degree or by taking

---

**1.** The trial court originally sustained the Board's motion to dismiss on statute of limitations grounds. This court affirmed the dismissal. The Missouri Supreme Court, however, accepted transfer, reversed the dismissal, and remanded the cause for further proceedings. *See Hagely v. Board of Educ.*, 841 S.W.2d 663 (Mo. banc 1992).

**2.** All further statutory references are to RSMo 1986 unless otherwise indicated.

additional credit hours, a teacher satisfied the requirements to move to a higher channel. When a teacher moved to the higher channel in the succeeding school year, they would also progress one step within the new channel. For example, a teacher who completed a Master's degree while on step eight of the Bachelor's channel would move up to step nine on the Master's channel the next school year.

However, for the 1986–1987 school year—at the request of the teachers in May 1986—the Board adopted a salary schedule that reduced the number of steps within each channel. The Board also adopted a salary conversion table to convert a teacher's placement from the prior salary schedule to the new one. The reduction in steps—with a concomitant salary increase per step—allowed teachers to reach the top of a channel quicker and, simultaneously, earn higher salaries per step each year. The initial conversion table placed all teachers in the old seventeen step Master's channel onto the new thirteen step Master's channel and placed those teachers moving from the Bachelor's channel to the Master's channel. During the negotiations between the representatives of the Board and the teachers that led to the condensed salary schedule for the 1986–1987 school year, it was clear that the new salary schedule would only be adopted with a salary conversion table. A conversion table was used in the following school years: 1986–1987, 1987–1988, 1988–1989, and 1989–1990. For the 1990–1991 school year, the Board abandoned use of the conversion tables at the insistence of the teachers.

In January 1991 the Teachers filed a petition alleging the Board's salary conversion tables discriminated against them and arbitrarily denied them the benefits they were entitled to as established by the past practices and actions of the Board because the tables placed them in a lower step in the Master's degree channel as compared to

their placement without a conversion table. After a non-jury trial, the trial court found the 1986–1990 conversion tables unreasonable, arbitrary, capricious and unlawful. The court also found the conversion tables unreasonable, capricious, arbitrary, and unlawful as applied to Hagely in 1987 and as to Brindell in 1989.[3] Finally, the court found the Board in 1990 unreasonably, arbitrarily, capriciously and unlawfully refused to retroactively place the Teachers in the Master's channel position they would have assumed without a conversion table.

The scope of our review in this matter is governed by the familiar dictates of Rule 73.01 and *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) because we review the judgment of the circuit court, not the decision of the administrative agency. *Barry Service Agency Co. v. Manning*, 891 S.W.2d 882, 887 (Mo.App. W.D.1995). Accordingly, we review the circuit court's judgment to determine whether its adjudication under § 536.150, RSMo 1994,[4] rests on substantial evidence and correctly declares and applies the law. *Id.*

We address the Board's second point on appeal first. The Board argues the trial court erred in not barring the Teachers' claims to back pay for the school years 1987–1988, 1988–1989, and 1989–1990 under the equitable doctrine of laches. Those years were neither included in the Teachers' grievance submitted to the Board nor included in the circuit court petition filed in January 1991. The Board also asserts Brindell is similarly barred from claiming back pay for the 1989–1990 school year. We agree.

In *Hagely*, our Supreme Court stated the following:

> Laches is a question of fact to be determined from all the evidence and circumstances adduced at trial. *Zykan*, 495 S.W.2d at 657.... No clear test has been

3. These are the years each of the Teachers earned their respective Master's degree and switched to the higher paying Master's channel.

4. This statute provides that the trial court must determine whether the decision by the Board is "unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion; and the court shall render judgment accordingly ...; but the court shall not substitute its discretion for discretion legally vested in such administrative officer or body...." § 536.150, RSMo 1994; *See also, Hagely*, 841 S.W.2d at 669.

established for the application of laches, nor are we able to set one now. Basically, the court must determine whether the harm to the Board in allowing the suit to proceed outweighs the harm to appellants in failing to consider their claims.

On remand, the circuit court should attempt to balance the hardships and practicalities facing each party by inquiring into the circumstances surrounding appellants delay in invoking their administrative remedies, and the effect of allowing claims against the Board for past budget years. Because the statutory limitation periods in this area tend to be quite short ..., it could be inferred that the General Assembly intended the prompt resolution of matters related to yearly school budgets. Nevertheless, the Board will have the burden of proving prejudice or change in circumstances sufficient to defeat appellant's claims covering the earlier school years. *Zykan*, 495 S.W.2d at 657.

*Hagely*, 841 S.W.2d at 670.

The trial court accepted the Teachers' analysis of the laches issue. It found the back pay claims would not adversely impact the District's budget and the Teachers did not waive their right to challenge the salary schedule by signing their contract each of the years in question. However, neither the Teachers nor the trial court specifically addressed the effect of allowing "claims against the Board for past budget years." *Hagely*, 841 S.W.2d at 670. Furthermore, the trial court did not consider why the General Assembly made the statutory limitation periods in this area so short. *See id.* Therefore, the trial court failed to weigh an important part of the laches question.

The District estimates its anticipated revenues each year and then negotiates with the teachers' representatives, usually in February. Several salary schedules are discussed and the cost of each is considered. The District does not set its annual budget until it knows the cost of the teachers' salary schedule for that year. The teachers vote on the proposed salary schedule, even though the result is not binding on the Board. The Board then considers the fiscal integrity of the District and the teachers' concerns and adopts a salary schedule. Next, the Board issues the teachers' contracts in either April or May. Under this framework, the Board commits funds in advance each year for the teachers' salaries and the District's budget.

As our Supreme Court noted, the statutory timetable placed upon the school districts' budgeting and the very short statute of limitations in this area, demonstrate a legislative intent that disputes over yearly school budgets are handled quickly. *See Hagely*, 841 S.W.2d at 670. Here, the District has an established grievance procedure available to its teachers. After a salary grievance is filed and a presentation is made to the Board, a decision is made regarding that teacher's salary. If the decision dissatisfies the teacher, the teacher can file an action under § 536.150, RSMo 1994. *See Hagely*, 841 S.W.2d at 669. There is no dispute over whether the Teachers knew of the grievance process in each of the years in which back pay is claimed.

After reviewing the evidence on this point, we find the trial court erred in allowing claims for past budget years against the Board. Such claims prejudice the Board's ability to maintain the District's fiscal health and fulfill its statutory duties because the District is required by law to submit an annual budget for each upcoming school year, including estimated revenues and expenditures for the next two years. *See* § 67.010, RSMo 1994. The Board must also adopt its salary schedule by May 15 each year to provide the District's teachers with annual raises. *See* § 168.110, RSMo 1994. To allow a teacher to ignore this established review process would hamper the district from exercising its fiscal duties under § 67.010, RSMo 1994, and § 168.110, RSMo 1994. Significantly, neither of the Teachers sought any available review mechanism until after their contracts were signed and after they were paid under those now disputed contracts. *See Elam v. Waynesville R–VI School Dist.*, 676 S.W.2d 880, 887[4] (Mo.App.1984)(citing *Magenheim v. Board of Education*, 347 S.W.2d 409 (Mo.App.1961)). Furthermore, the Board would possibly violate the Teacher Tenure Act's mandate that all teachers be treated the same if it were to

retroactively change only one teacher's salary in a channel's step and not the others in that same position. *See Vilelle v. Reorganized School Dist. No. R–1,* 689 S.W.2d 72, 75 (Mo.App.1985); § 168.110, RSMo 1994.

We further find that any harm to the Teachers not being allowed to pursue their claims is obviated by their own delay and failure to use the administrative procedures provided by the District and does not outweigh the prejudice to the District. The Teachers did not file their grievances until May 1990 for school years reaching back to 1987. Under these circumstances, the harm to the Teachers is outweighed by the prejudice to the District because teachers would be allowed to challenge their contracts in the year or years after the salary schedule at issue was approved by the Board. The Board cannot anticipate charges to the District's finances caused by grievances or lawsuits not filed in the year in which the contract was signed. Furthermore the harm suffered by the Teachers is minimal. First, the Teachers received a salary increase commensurate with raises historically given in the District. Second, the Teachers had an available grievance process which they knew about and chose to ignore. Therefore, the Teachers' claims for back pay are barred under the doctrine of laches. Hagely is barred from claiming back pay for the 1987–1988 to 1989–1990 school years and Brindell is barred from claiming back pay for the 1989–1990 school year.[5]

■ In its next point on appeal, the Board asserts the trial court erred in holding the Board acted arbitrarily in adopting and applying the conversion tables that affected the placement of the Teachers in the salary schedules. We agree.

Citing *Dial v. Lathrop R–II School District,* 871 S.W.2d 444 (Mo. banc 1994), the Teachers apparently argue they had a vested legal right to move onto the Master's channel according to the Board's past custom and practice, regardless of whether the Board exercised its right to change its past custom and practice by adopting a new salary schedule with condensed steps and a conversion table applicable to *all* teachers. *See* § 168.110, RSMo 1994; *School Dist. of Kansas City v. Clymer,* 554 S.W.2d 483, 487 (Mo.App.1977); *Vilelle,* 689 S.W.2d at 75. The Teachers argue essentially this: The Board can change its practice, but it can't change it arbitrarily. However, the Teachers conceded during oral argument the Board had the authority to completely deviate from past custom and practice by adopting a salary schedule and conversion table that determined the teachers' salary differently than previous years. Here, the District was not making changes to the past practice to reduce salaries, but rather was enacting policies that benefitted all its teachers in every channel. Furthermore, the number of steps in the salary schedule was reduced at the teachers' request. All teachers received a salary increase in line with historical raises in the new, condensed salary schedule with the conversion table. During the negotiations, the use of a conversion table was discussed because otherwise the teachers' raises could not be afforded by the District. The teachers voted and approved the use of the condensed salary schedule in 1986 and the conversion table. The adoption of the conversion table reflected a long, deliberate process of discussion and negotiation between the Board and the teachers.

Under these facts, we find the Board's use of a conversion table in conjunction with the Teachers' salary schedules was not arbitrary, capricious, unconstitutional, unreasonable, unlawful, or an abuse of discretion.[6]

The judgment of the trial court is reversed.

CRAHAN, P.J., and CRANDALL, J., concur.

---

**5.** The Teachers' remaining claims concern the 1990–1991 school years forward.

**6.** Since the Board acted lawfully when it placed the Teachers according to the conversion tables, it is unnecessary to address whether the Teachers' salaries should be retroactively adjusted.